Charles VAN PATTEN v. STATE of Arkansas

CA CR 85-23                                    697 S.W.2d 919

Court of Appeals of Arkansas
En Banc
Opinion delivered October 16, 1985

*Hale, Lee, Young, Green, Ward & Morley*, by: *Randall W. Morley*, for appellant.

*Steve Clark*, Att'y Gen., by: *Joel O. Huggins*, Asst. Att'y Gen., for appellee.

LAWSON CLONINGER, Judge. Appellant, Charles Van Patten, was convicted of driving while intoxicated in violation of Ark. Stat. Ann. § 75-2503 (Supp. 1985). The court fined him $150.00 plus costs, sentenced him to twenty-four (24) hours in jail, suspended his driver's license for ninety (90) days, and ordered him to complete an alcoholic rehabilitation program. On appeal, appellant argues that the police stopped him without sufficient reasonable cause and thus the trial court should have excluded all evidence of the DWI. We agree with appellant and reverse his conviction.

The events leading up to the charges being brought against appellant occurred on the evening of December 18, 1983. Kevin Tindle, a Little Rock policeman, testified that at approximately 11:34 p.m. he received a call regarding a loud party disturbance at Mara Lynn Apartments. While enroute to investigate the disturbance, Officer Tindle received a second call which advised him that the person creating the disturbance had left the apartments in a brown Jeep. As Officer Tindle approached the intersection of Shackleford and Mara Lynn, he observed a brown and tan Jeep approaching the same intersection. Tindle said that the driver of the vehicle was not committing any traffic violations, but that he stopped the vehicle anyway, based on the information he had received from the calls. The officer testified that the driver of the Jeep, the appellant, smelled of alcohol and staggered when he stepped out of the Jeep. Officer Tindle transported appellant to the detention center and administered a breathalyzer test, the

results of which were .15%.

Appellant argues that Officer Tindle did not have reasonable cause to stop him because he was not committing any traffic violations and the call about the loud party was not specific enough to give Officer Tindle a reasonable basis for stopping him. The State argues that the stop of appellant was reasonable because the officer had reason to suspect that a misdemeanor possibly involving injury to persons and property had been committed and because of the location of the Jeep and the time of night.

The Fourth Amendment of the Constitution protects individuals by forbidding all unreasonable searches and seizures. Appellant was protected by the Fourth Amendment as he drove down the street, so the issue is whether, under all of the circumstances, appellant's right to personal security was violated by an unreasonable seizure. The test is to balance the nature and quality of the intrusion on personal security (the seizure) against the importance of the governmental interests alleged to justify the intrusion. *United States* v. *Hensley*, 496 U.S. ___, 83 L.Ed.2d 604 (1985).

Arkansas law recognizes that where felonies or crimes involving a threat to public safety are concerned, the government's interest in solving the crime and promptly detaining the suspect outweighs the individual's right to be free of a brief stop and detention. A.R.Cr.P. Rule 3.1 reads in pertinent part:

> A law enforcement officer lawfully present in any place may, in the performance of his duties, stop and detain any person who he reasonably suspects is committing, has committed, or is about to commit (1) a felony, or (2) a misdemeanor involving danger of forcible injury to persons or of appropriation of or damage to property, if such action is reasonably necessary either to obtain or verify the identification of the person or to determine the lawfulness of his conduct.

In *Hill* v. *State*, 275 Ark. 71, 628 S.W.2d 284, *cert. denied*, 459 U.S. 882 (1982), the police received a radio dispatch describing an armed and extremely dangerous suspect who had committed armed robbery and murder. The suspect's vehicle was

described as a maroon, late model Ford Thunderbird with a white license plate with dark blue or black lettering. Soon thereafter, an officer observed a vehicle matching that description with a white Oklahoma license plate with dark letters. The Arkansas Supreme Court held that the stop was reasonable because the car matched the description; it was not likely that another vehicle of the description broadcasted was in the area at that time; and the crimes had just recently been committed in a neighboring county. The court, in discussing Rule 3.1, stated that "the justification for the investigative stop depends upon whether, under the totality of the circumstances, the police have specific, particularized, and articulable reasons indicating the person or vehicle may be involved in criminal activity." *Id.* at 80.

In the case at bar, we do not think Officer Tindle had specific, particular or articulable reasons to suspect that a felony or a misdemeanor involving danger of injury to persons or property had been committed. The radio dispatch that he received was anonymous and it gave extremely general information about a "loud party" and a "brown Jeep." The officer did not investigate or confirm the complaint before stopping appellant, so he had no reason to suspect that a misdemeanor involving personal or property damage had been committed by the occupant.

Thus, under the totality of the circumstances, we think Officer Tindle's stop of appellant was unreasonable under A.R.Cr.P. Rule 3.1; that it violated appellant's Fourth Amendment rights; and that the evidence of the DWI should have been excluded.

Reversed and dismissed.

COOPER and MAYFIELD, JJ., dissent.

JAMES R. COOPER, Judge, dissenting. I respectfully dissent from the majority opinion because, in my opinion, it fails to follow Arkansas law as set out in *Baxter v. State,* 274 Ark. 539, 626 S.W.2d 935 (1982). In *Baxter,* the Arkansas Supreme Court affirmed our unpublished opinion issued September 9, 1981. In *Baxter,* a general report of an armed robbery was broadcast over police radios. An officer went to check out a city park, located approximately one-fourth mile from the scene of the robbery. He

observed a vehicle in the park. He stopped the vehicle and later discovered evidence which led to the appellant's conviction. In *Baxter*, the officer testified that he had no reason to stop the subject except to seek information, and that he asked for Baxter's driver's license in case other officers wished to contact him later as a witness.

The Supreme Court noted that cases "regarding the police authority to make investigatory stops based upon reasonable suspicion that a vehicle or a person is involved in criminal activity are inapplicable to the stop at issue here." 274 Ark. at 542 [citations omitted]. The Court then said:

> Involved here is the question of the extent of permissible interruption a citizen must bear to accommodate a law enforcement officer who is investigating a crime. The practical necessities of law enforcement and the obvious fact that any person in society may approach any other person for purposes of requesting information make it clear the police have the authority to approach civilians.

274 Ark. at 543. The Court went on to say:

> There is nothing in the Constitution which prevents the police from addressing questions to any individual. *See Terry* v. *Ohio, supra.* However the approach of a citizen pursuant to a policeman's investigative law enforcement function must be reasonable under the existent circumstances and requires a weighing of the government's interest for the intrusion against the individuals right to privacy and personal freedom. To be considered are the manner and intensity of the interference, the gravity of the crime involved, and the circumstances attending the encounter. [citation omitted.]

*Id.* The Court then cited Rule 2.2 of the Ark. R. Crim. P., Ark. Stat. Ann. Tit. 43, App. (Repl. 1977), which basically provides that a police officer may request anyone to furnish information or to cooperate in the investigation of a crime, and may even require the person to go to a police station.

Turning to the case at bar, the police received a report of what was variously described as a "disturbance" or a "loud party disturbance". A vehicle similar to that driven by the appellant

was observed within a block or two of the scene after an additional report had been received that the person responsible for the disturbance had just left the scene. It is true that, at the time of the stop, the officer did not know the nature of the disturbance; he did not know whether it was simply a loud party, a family quarrel, a fight, or any other type crime. The majority opinion only cites Rule 3.1 of the Rules of Criminal Procedure, assuming that the appellant was suspected of being the person responsible for the "disturbance", and then holds that, since there was no information in the officer's possession that crimes against property or persons had occurred, Rule 3.1 would not allow the stop.

Part of the reason for the majority's confusion is the fact that the Supreme Court, in *Baxter*, mentioned the seriousness of the crime. Yet the Court did not rely on Rule 3.1, obviously because there was absolutely no indication that Baxter had anything to do with the crime. The case was affirmable only under Rule 2.2, and I think we should reach the same result. At least in this case there was an articulable reason to believe that Van Patten, or whoever the operator of the Jeep turned out to be, did truly have knowledge of whatever criminal activity had occurred. In *Baxter*, the Supreme Court upheld the stop, search, and arrest, of a person who, at best, was a mere passer-by.

I would affirm.

MELVIN MAYFIELD, Judge, dissenting. I dissent from the majority's decision and in order to put this case in proper perspective, I first quote the entire argument made for the State by the Attorney General.

> Appellant appeals his conviction of driving while intoxicated arguing the trial court erred in finding the investigatory stop of appellant was supported by a reasonable suspicion. Appellant does not argue there was a lack of probable cause for his arrest for driving while intoxicated following the initial stop. Appellee submits the stop of appellant was valid under both the Fourth Amendment and Rule 3.1 of the Arkansas Rules of Criminal Procedure because it was based in specific, particular and articulable reasons indicating appellant had been involved in criminal activity. *Terry* v. *Ohio*, 392 U.S. 1 (1968); A.R.Cr.P. Rule 3.1; *Hill* v. *State*, 275 Ark. 71, 628 S.W.2d 284 (1982).

The analysis of this issue under the Fourth Amendment and Rule 3.1 is overlapping in most part. Rule 3.1 is a codification of those interests protected under the Fourth Amendment as that Amendment was interpreted by the Supreme Court in *Terry*. Rule 3.1 deals only with the validity of the initial stop which was but one aspect of the stop and frisk issue in *Terry*. Since Rule 3.1 tracks the Fourth Amendment protections in part relevant to the facts in this case, the issue here can and should be resolved on the basis of Rule 3.1. Resolution of the issue thus depends initially on whether disorderly conduct is a misdemeanor involving danger of injury to persons or property and if so, secondly on whether the policeman had a reasonable suspicion when he stopped appellant.

Disorderly conduct, defined at Ark. Stat. Ann. § 41-2908 (Repl. 1977), can clearly be a misdemeanor involving the danger of injury to persons or property. § 41-2908(1)(a) defines disorderly conduct as purposely causing public inconvenience, annoyance or alarm by fighting or by violent, threatening behavior. This section of disorderly conduct is clearly concerned with preventing injury to persons. § 41-2908(1)(c) involves danger of injury to persons, as well and § 41-2908(1)(h) involves danger of injury to property. Furthermore, as precedents show, those persons convicted of disorderly conduct have often injured others. *See, e.g. Bousquet* v. *State*, 261 Ark. 263, 548 S.W.2d 125 (1977); *Farr* v. *State*, 6 Ark. App. 14, 636 S.W.2d 884 (1982).

Because of this danger of injury to either persons or property, disorderly conduct falls within that group of misdemeanors identified in Rule 3.1.

Since disorderly conduct is covered by Rule 3.1 the next issue is whether the policeman here had specific, particular and articulable reasons supporting his investigatory stop of appellant. Rule 2.1, defining reasonable suspicion, the commentary to Rule 2.1, and case law give a clear picture of what is required before an investigatory stop will be deemed valid. In essence there must be an objective manifestation (i.e., specific, particular and ar-

ticulable reasons) that the person stopped is, has been, or is about to be engaged in criminal activity. Such is the case here. The policeman, while on patrol, was sent to investigate suspected disorderly conduct at a party in western Little Rock at 11:34 p.m. While on his way, he received a second radio broadcast that the suspect creating the disturbance had left in a brown jeep and was traveling east. The policeman met a brown jeep at an intersection east of the scene of the disturbance. The policeman stopped the jeep at that intersection. The intersection was in close proximity to the scene of the disturbance.

The specific and particular facts relied upon by the police officer were: 1) the radio broadcast informing him the suspect causing the disturbance had left in a brown jeep, 2) the nearness of a brown jeep and its relative location to the scene of the disturbance and 3) the time of night. Any one of these facts alone may not have been enough to support a reasonable suspicion; when combined, however, there is clearly a basis in fact for the stopping of appellant. The stop was valid because supported by reasonable suspicion. (Citations to transcript omitted.)

To the above I would point out that reasonable suspicion is defined by A.R.Cr.P. Rule 2.1 as follows:

"Reasonable suspicion" means a suspicion based on facts or circumstances which of themselves do not give rise to the probable cause requisite to justify a lawful arrest, but which give rise to more than a bare suspicion; that is, a suspicion that is reasonable as opposed to an imaginary or purely conjectural suspicion.

The Commentary to Rule 2.1 states in part: "The purpose of the rule is to allow brief detention in circumstances not affording reasonable cause to arrest but giving rise to a 'reasonable suspicion' that criminal conduct is afoot." In *Adams* v. *Williams*, 407 U.S. 143, 145-46 (1972), the Supreme Court of the United States said:

The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a

crime to occur or criminal to escape. On the contrary, *Terry* recognizes that it may be the essence of good police work to adopt an intermediate response. . . . A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at that time.

I would affirm on the basis argued by the Attorney General. I also think it would be proper to affirm for the reasons set out in the dissenting opinion of Judge Cooper.