Charles Stephen REEVES *v.* STATE of Arkansas

CA CR 86-135                               722 S.W.2d 880

Court of Appeals of Arkansas
Division II
Opinion delivered February 4, 1987

18

*Buford Gardner*, for appellant.

*Steve Clark*, Att'y Gen., by: *Lee Taylor Franke*, Asst. Att'y Gen., for appellee.

BETH GLADDEN COULSON, Judge. The appellant, Charles Stephen Reeves, was convicted by jury verdict of possession of marijuana and possession of methamphetamine. Ark. Stat. Ann. § 82-2617 (Supp. 1985). The court imposed concurrent sentences of one (1) year on the first count and three (3) years on the second count. A pretrial motion had been filed alleging that the stop and

subsequent search of appellant's vehicle was unreasonable and that all evidence seized should have been suppressed because the arresting officer lacked reasonable cause to stop the vehicle. The trial court denied the motion. On appeal, it is argued that the trial court erred in denying the motion and that our decision in *Van Patten v. State*, 16 Ark. App. 83, 697 S.W.2d 919 (1985), should govern. We disagree with the appellant and affirm the judgment.

On the night of September 21, 1985, Officer Glen Redding of the Harrison Police Department heard a radio call advising officers to be on the lookout for a jeep—the driver of which was shooting fireworks out of the window of the vehicle and "was possibly DWI." The radio dispatcher gave a license number and advised that the owner of the jeep was one Charles Stephen Reeves. In route to the police station, Officer Redding observed a jeep similar to the one that had been described on the radio call. The vehicle was about to exit from a parking lot onto the highway. As Officer Redding was aware that the suspect vehicle had not been located by other officers, he parked his unmarked car and waited for the jeep to pass so that the license number could be verified. The officer noticed that the driver took unusually long in pulling out onto the highway despite the lack of traffic. The license number matched the one broadcast over the radio. The officer then followed the jeep and noticed that it was proceeding extremely slow and was weaving occasionally, but that no traffic violations were committed. Based upon these observations, the officer determined that the driver might be under the influence of alcohol. The jeep pulled off the highway into a Holiday Inn parking lot, and the officer stopped to check the driver.

Officer Redding approached the jeep and asked the driver to exit the vehicle. He recognized the driver as one Charles Stephen Reeves and noticed that the appellant smelled of intoxicants and that his eyes were bloodshot. A paper cup approximately 1/4 full of what appeared to be either bourbon or scotch was visible inside the jeep. When asked to produce identification, the appellant reached back into the vehicle to pick up a wallet. The officer saw the barrel of a rifle protruding from between the front seats and asked Mr. Reeves to step to the rear of the jeep in order to seclude him from the area of the weapon. He then ran a driver's license check and waited for a back-up unit. When the back-up arrived, Officer Redding asked the second officer to give the appellant a

field sobriety test. He also stated that there was a weapon in the vehicle and that he was going to secure it while the test was being administered.

Officer Redding reached inside the jeep to check the weapon and noticed a clear plastic baggie near the driver's seat on the inside of the vehicle; the baggie contained a green leafy substance. Based upon the texture, odor, and appearance of the contents, the type of container, and Officer Redding's experience, he immediately concluded that the substance was marijuana. The officer then checked the rifle to see if it was loaded and realized that it was a pellet gun. The officer replaced the gun but also saw some scales on the opposite seat. Shining his light into the jeep from the outside, the officer noticed a small unzipped change purse hanging from a bar on the inside of the jeep. Two small vials of a type normally associated with the transportation of methamphetamine were visible inside the purse. The appellant was then patted down for weapons and placed under arrest for possession of a controlled substance—marijuana. Upon the arrival of a third officer, an inventory search was conducted of the jeep's contents. A list of the items taken during the inventory search was introduced at trial and includes such items as bottle rockets, the alleged marijuana, a loaded Ruger 357 Mag. revolver, and plastic bags and vials containing a white powder.

■ The Fourth Amendment to the Constitution provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." That protection extends to persons driving down the street. If the police stop a vehicle and detain its occupants, a seizure has occurred. Whenever practicable, the police are required to obtain advance judicial approval of searches and seizures through the warrant procedure. That process turns on the question of "probable cause." However, it has been held that, consistent with the Fourth Amendment, the police may stop persons on the street or in their vehicles in the absence of either a warrant or probable cause under limited circumstances. *Terry* v. *Ohio*, 392 U.S. 1 (1968); *United States* v. *Hensley*, 469 U.S. 221 (1985); and *Leopold* v. *State*, 15 Ark. App. 292, 692 S.W.2d 780 (1985). One of those limited circumstances involves cases such as the present one—the investigatory stop.

■ In determining whether an investigatory stop has been made consistent with the mandates of the Fourth Amendment, we balance the nature and quality of the intrusion against the importance of the governmental interests alleged to justify that intrusion. *Van Patten* v. *State*, 16 Ark. App. 83, 697 S.W.2d 919 (1985). Where felonies or crimes involving a threat to public safety are concerned, the government's interest in solving the crime and promptly detaining the suspect outweighs the individual's right to be free from a brief stop and detention. That policy has been codified in Rule 3.1 of the Arkansas Rules of Criminal Procedure, which provides in part that:

> A law enforcement officer lawfully present in any place may, in the performance of his duties, stop and detain any person who he *reasonably suspects* is committing, or is about to commit (1) a felony, or (2) a misdemeanor involving danger of forcible injury to persons or of appropriation of or damage to property, if such action is reasonably necessary either to obtain or verify the identification of the person or to determine the lawfulness of his conduct. [Emphasis ours.]

In determining whether the officer's suspicion was reasonable, A.R.Cr.P. Rule 2.1 provides the following definition:

> "Reasonable suspicion" means a suspicion based on facts or circumstances which of themselves do not give rise to the probable cause requisite to justify a lawful arrest, but which give rise to more than a bare suspicion; that is, a suspicion that is reasonable as opposed to an imaginary or purely conjectural suspicion.

■ The Arkansas Supreme Court has stated that "[t]he common thread which runs through the decisions makes it clear that the justification for the investigative stops depend[s] upon whether, under the totality of the circumstances, the police have specific, particularized, and articulable reasons indicating the person or vehicle may be involved in criminal activity." *Hill* v. *State*, 275 Ark. 71, 80, 628 S.W.2d 285, 288 (1982), *cert. denied*, 459 U.S. 882 (1982).

We first note that the radio dispatcher advised that the driver of the jeep was shooting fireworks out of the window of the

vehicle and was possibly DWI. Our statutes make it a crime to operate a motor vehicle while intoxicated. Ark. Stat. Ann. § 75-2503 (Supp. 1985). It is also a crime to "ignite or discharge any permissible articles of fireworks within or throw the same from a motor vehicle while therein . . . ." Ark. Stat. Ann. § 82-1705 (Repl. 1976). That such conduct involves danger of injury to persons or property is obvious. Therefore, to the extent that our inquiry focuses on A.R.Cr.P. Rule 3.1, it is clear that the radio dispatcher alerted Officer Redding to the possibility that the driver of the suspect jeep might be committing misdemeanors involving danger of injury to persons or damage to property.

The question then becomes whether Officer Redding, under the totality of the circumstances, had such specific, particularized, and articulable reasons as would warrant his investigatory stop of the appellant's vehicle for the activity specified in the radio dispatch. The dispatcher gave both the license number of the vehicle and the name of the owner, Charles Stephen Reeves. Officer Redding testified that after he verified the license number of the appellant's jeep as matching the one broadcast, he followed the vehicle for about four blocks. The officer stated that based upon the manner in which the jeep had pulled out of the first parking lot, the slow rate of speed at which it proceeded, and the occasional weaving, the driver was probably under the influence of alcohol. The officer also testified that the Holiday Inn parking lot contained a drinking establishment and that, had he not approached the driver, "the officers arriving on the scene would not have seen him get out of the jeep or would not have been able to place the driver of the jeep."

These facts, especially the observation of the appellant's ability to drive and the verification of the license number, when viewed in light of the information provided in the radio dispatch, clearly amount to specific, particularized, and articulable reasons indicating that the person or vehicle may be involved in criminal activity. The appellant suggests that our decision in *Van Patten* v. *State, supra,* leads to the opposite conclusion. We disagree. *Van Patten* involved two separate radio dispatches; the first merely stating that there was "a loud party" disturbance, while the second indicated that the individual causing the disturbance may have left the scene in a brown jeep. The officer in that case stated that he had observed a jeep of that description in

the vicinity of the disturbance, that the driver of the jeep was not committing any traffic violations, but that "he stopped the vehicle anyway." *Van Patten* at 84. We pointed out that the officer *"had no reason to suspect that a misdemeanor involving personal or property damage had been committed by the occupant."* (Emphasis ours.) *Van Patten* at 86. Those facts clearly distinguish the two cases, and we find that under the totality of the circumstances the investigatory stop in the present case was both reasonable and warranted.

However, our inquiry does not end with a finding that the investigatory stop was proper. The issue now becomes whether, consistent with the Fourth Amendment, Officer Redding had the right to enter the appellant's jeep in order to examine the weapon. That act constituted a search—one which led not only to the inadvertent discovery of the marijuana but also to the subsequent arrest.

In *Terry* v. *Ohio*, 392 U.S. 1 (1968), the United States Supreme Court upheld the validity of an officer's investigatory "stop and frisk" because the officer feared that the suspects were armed and that they were about to engage in criminal activity. The Court stated that:

> We are now concerned with more than the governmental interest in investigating crime; in addition, there is the more immediate interest of the police officer in taking steps to assure himself that the person with whom he is dealing is not armed with a weapon that could unexpectedly and fatally be used against him. Certainly it would be unreasonable to require that police officers take unnecessary risks in the performance of their duties. *Id.* at 23.

The considerations announced in *Terry, supra*, are reflected in Rule 3.4 of the Arkansas Rules of Criminal Procedure, which provides:

> If a law enforcement officer who has detained a person under Rule 3.1 reasonably suspects that the person is armed and presently dangerous to the officer or others, the officer or some one designated by him may search the outer clothing of such person and the immediate surroundings for, and seize, any weapon or other dangerous thing which

> may be used against the officer or others. In no event shall this search be more extensive than is reasonably necessary to ensure the safety of the officer or others.

The Supreme Court has subsequently had occasion to apply the same rationale to an investigatory stop involving an automobile. *Michigan* v. *Long*, 463 U.S. 1032 (1983). The similarity in facts between that case and the present, coupled with the discussion in *Long*, leads us to conclude that Officer Redding's initial search of the appellant's vehicle was clearly proper.

*Long* involved the investigatory stop of a vehicle that had been traveling erratically and had swerved off into a ditch. The occupant of the vehicle met the officers at the rear of his car but he had difficulty in responding to the officers' requests for the vehicle registration and he "appeared to be under the influence of something." After another request for the registration, the driver turned from the officers and began walking toward the open door of the vehicle. The officers followed the driver and both observed a large hunting knife on the floorboard of the driver's side of the car. One officer shined his flashlight into the interior of the car " 'to search for other weapons' " and noticed something protruding from under the armrest on the front seat. He knelt in the vehicle, lifted the armrest, and then saw an open pouch on the front seat containing what he determined to be marijuana. The driver of the vehicle was arrested for possession of marijuana. *Long* at 1035-36.

The facts in *Long* led the Supreme Court to conclude that "the search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief . . . that the suspect is dangerous and . . . may gain immediate control of weapons." *Long* at 1049. The Court then noted that if while conducting a legitimate protective search of the interior of the vehicle the officer should discover contraband other than weapons, he cannot be required to ignore the contraband and "the Fourth Amendment does not require its suppression in such circumstances." *Long* at 1050.

The appellant argues that the officer in the present case felt neither threatened nor had a reasonable suspicion that the appellant was dangerous. In *Long*, the lower court had

determined that it was not reasonable for the officers to fear the driver because he was effectively under their control during the investigative stop and could not get access to any weapons that might have been located in the car. Also, the driver of the vehicle had not manifested a violent disposition. In reversing the state court's decision, the Supreme Court stated that such suspects not only have the opportunity to break away from police control and retrieve a weapon from the vehicle, but also, if not placed under arrest, they would ultimately be able to reenter the vehicle and have access to any weapons inside. *Long* at 1052. Our reading of the record in this case reveals ample evidence that Officer Redding felt that the presence of the weapon constituted a threat and that, for his own safety and that of others nearby, it was necessary to secure the weapon while the appellant was being detained by the second officer.

In light of the holding in *Michigan* v. *Long*, we find that the appellant's Fourth Amendment rights were not violated by the limited protective search conducted by Officer Redding. As noted in *Long*, the Fourth Amendment also presents no bar to use of the contraband which was discovered during the course of that search. That conclusion can be reached either on the direct language found in *Long*, or on the underlying theory that Officer Redding was lawfully present in the vehicle, the discovery of the bag containing the marijuana was inadvertent, and the incriminating nature of the material was immediately apparent. *Coolidge* v. *New Hampshire*, 403 U.S. 443 (1971), *reh'g denied*, 404 U.S. 874 (1971); *Pruett* v. *State*, 282 Ark. 304, 310, 669 S.W.2d 186, 190 (1984), *cert. denied*, 469 U.S. 963 (1984); and *Wright* v. *State*, 267 Ark. 264, 270-71, 590 S.W.2d 15, 20 (1979). That same "plain view" doctrine applies to the vials in the change purse. *Texas* v. *Brown*, 460 U.S. 730 (1983). We also note that the Supreme Court's holding in *Michigan* v. *Long* was reaffirmed only recently. *New York* v. *Class*, ___ U.S. ___, 106 S.Ct. 960 (1986).

Having found that both the investigative stop and the limited protective search were reasonable, and that neither the marijuana nor the vials were the products of an illegal search, we turn to the evidence obtained during the subsequent inventory search of the jeep. Rule 12.6(b) of the Arkansas Rules of Criminal Procedure specifically provides that: "A vehicle im-

pounded in consequence of arrest, or retained in official custody for other good cause, may be searched at such times and to such extent as is reasonably necessary for safekeeping of the vehicle and its contents." Our cases in this area clearly indicate that the inventory search in the present matter was both reasonable and authorized. *Henderson* v. *State*, 16 Ark. App. 225, 699 S.W.2d 419 (1985); and *Colyer* v. *State*, 9 Ark. App. 1, 652 S.W.2d 645 (1983).

Affirmed.

COOPER, J., agrees.

CORBIN, C.J., concurring.

DONALD L. CORBIN, Chief Judge, concurring. I concur with the majority's determination that the trial court did not err in its denial of appellant's motion to suppress. In reaching its decision, this court correctly utilized the balancing test enunciated in *United States* v. *Hensley*, 469 U.S. 221 (1985). However, the facts of this case present a close question as to whether Officer Redding had reasonable suspicion under the totality of the circumstances to make an investigative stop of appellant's jeep.

In the case at bar, Officer Redding's "reasonable suspicion" consisted of a radio dispatch alerting officers to be on the lookout for a jeep and his personal observations of that jeep after following it for four blocks. Its driver had allegedly committed the crimes of driving while intoxicated and shooting fireworks out of the window. The dispatch was extremely specific and provided the license number as well as the owner's name. This is in sharp contrast to the general information provided by the radio dispatcher in *Van Patten* v. *State*, 16 Ark. App. 83, 697 S.W.2d 919 (1985). There, the appellant successfully argued that the arresting officer did not have reasonable cause to stop him. He based his argument on the fact he was not committing any traffic violations at the time of the stop as well as the vague dispatch. In the instant case, appellant Reeves committed no traffic violations prior to the stop of his vehicle and the record reflects that he was not charged with DWI or shooting fireworks. Officer Redding testified that he followed appellant's jeep for approximately four blocks after verifying the license number as matching the one broadcast. He observed the manner in which the jeep pulled out of the parking

lot, its slow rate of speed and occasional weaving and he concluded the driver was probably under the influence of alcohol. His investigatory stop of appellant's jeep was based on these observations and the radio dispatch.

Although an extremely close question is involved here, I concur with the result reached by the majority. The United States Supreme Court has traditionally limited the reach of any Fourth Amendment exception to that which is necessary to accommodate the identified needs of society. *Arkansas* v. *Sanders*, 442 U.S. 753 (1979). Accordingly, cases such as this require close scrutiny by our courts and each will be decided on its particular facts.