David MILLER *v.* STATE of Arkansas

CA CR 86-192                                    727 S.W.2d 393

Court of Appeals of Arkansas
Division I
Opinion delivered April 15, 1987

*William R. Simpson, Jr.*, Public Defender, *Donald K.*

*Campbell, III*, Deputy Public Defender, by: *Didi Harrison*, Deputy Public Defender, for appellant.

*Steve Clark*, Att'y Gen., by: *Mary Beth Sudduth*, Asst. Att'y Gen., for appellee.

BETH GLADDEN COULSON, Judge. Appellant, David Miller, was convicted of driving while intoxicated. His sole ground for reversal on appeal is that the trial court erred in finding that the arresting officer had sufficient probable cause to stop him as he was driving. We find no error on the trial court's part, and, accordingly, we affirm its judgment.

Appellant was arrested in the early morning hours of November 9, 1985. Officers of the Jacksonville Police Department had received a call concerning a fight in progress with weapons on a nightclub parking lot. Patrolman Charles Jenkins arrived at the scene shortly afterward and was told by a nightclub employee that the two men involved in the fight had left five or six minutes earlier. According to the employee, one of the men was very drunk, had been using a long club on his opponent, and had left in a black Ford pickup truck. Jenkins then radioed to the other police units working in Jacksonville at the time to look for "a black Ford pickup truck, with one white male."

About two or three minutes after hearing the broadcast, Sergeant John Clark saw a black Ford pickup truck about three-fourths of a mile from the site of the nightclub. Clark radioed for a backup before stopping the vehicle. While following the pickup, Sergeant Clark observed the driver negotiate several curves in an erratic manner and travel through one sharp curve down the center of the road.

In the meantime, Officer John Wooley had also heard the call and saw the black pickup run through a stop sign. As he was pulling out in pursuit, he noticed Sergeant Clark's patrol car move in behind the truck. Officer Wooley then backed up Sergeant Clark, who turned on his blue lights and stopped the vehicle. Sergeant Clark approached the pickup from the driver's side and saw appellant, from whom a strong odor of intoxicants came, sitting in the driver's seat. When appellant got out of the passenger compartment, as requested, he stumbled to the back and held on to the vehicle for support. Without administering a

field sobriety test, Sergeant Clark placed appellant under arrest for DWI first offense and transported him to the police department. Following a municipal court conviction, appellant appealed to Pulaski County Circuit Court, where he was found guilty and sentenced to ten days in jail with one day credited and nine days suspended, fined $250, and assessed court costs. From that decision this appeal arises.

Appellant argues that, under *Hill* v. *State*, 275 Ark. 71, 628 S.W.2d 284, *cert. denied*, 459 U.S. 882 (1982), and this court's decision in *Van Patten* v. *State*, 16 Ark. App. 83, 697 S.W.2d 919 (1985), the trial court erred in finding that Sergeant Clark had sufficient probable cause to make an investigatory stop of his vehicle. It is his contention that the totality of the circumstances test, as enunciated by the Arkansas Supreme Court in *Hill*, was not satisfied by the circumstances of the present case.

■ Recently, in *Reeves* v. *State*, 20 Ark. App. 17, 722 S.W.2d 880 (1987), we had occasion to review the line of cases dealing with investigatory stops. We noted that Fourth Amendment protection "against unreasonable searches and seizures" extends to persons driving down the street. It has been held, however, as we observed in *Reeves*, that, consistent with the Fourth Amendment, police may stop persons on the street or in their vehicles in the absence of either a warrant or probable cause under limited circumstances. *Terry* v. *Ohio*, 392 U.S. 1 (1968); *Leopold* v. *State*, 15 Ark. App. 292, 692 S.W.2d 780 (1985). One of those limited circumstances involves the investigatory stop. *Reeves*, 20 Ark. App. at 21.

■ The test to be applied in determining whether an investigatory stop has been made consistent with the mandates of the Fourth Amendment is a balancing of the nature and quality of the intrusion against the importance of the governmental interests alleged to justify that intrusion. *Reeves*, 20 Ark. App. at 22; *Van Patten* v. *State*, 16 Ark. App. at 85, citing *United States* v. *Hensley*, 496 U.S. 221 (1985). Where felonies or crimes involving a threat to public safety are concerned, the government's interest in solving the crime and promptly detaining the suspect outweighs the individual's right to be free from a brief stop and detention. *Van Patten, supra.* This policy consideration appears in A.R.Cr.P. Rule 3.1, which provides in part that:

> A law enforcement officer lawfully present in any place may, in the performance of his duties, stop and detain any person who he reasonably suspects is committing, or is about to commit (1) a felony, or (2) a misdemeanor involving danger of forcible injury to persons or of appropriation of or damage to property, if such action is reasonably necessary either to obtain or verify the identification of the person or to determine the lawfulness of his conduct.

In determining the reasonableness of the officer's suspicion, A.R.Cr.P. Rule 2.1 provides the following definition:

> "Reasonable suspicion" means a suspicion based on facts or circumstances which of themselves do not give rise to the probable cause requisite to justify a lawful arrest, but which give rise to more than a bare suspicion; that is, a suspicion that is reasonable as opposed to an imaginary or purely conjectural suspicion.

The Arkansas Supreme Court has stated that "[t]he common thread which runs through the decisions makes it clear that the justification for the investigative stops depend[s] upon whether, under the totality of the circumstances, the police have specific, particularized, and articulable reasons indicating the person or vehicle may be involved in criminal activity." *Hill* v. *State*, 275 Ark. at 80.

In *Hill*, a police radio broadcast described a late model maroon Ford Thunderbird bearing a license plate with dark blue or black lettering on a white background. The court found that the police had reasonable suspicion to make an investigatory stop of the appellant's recent model maroon Ford Thunderbird displaying an Oklahoma license plate with a white background and dark letters. The court noted additionally that it was not likely that another vehicle of that description was in the Montgomery-Garland County area at that time.

In contrast to the specificity of the description approved by the Supreme Court in *Hill*, this court found the information provided in *Van Patten* v. *State, supra*, "extremely general" in nature. There, two separate police radio dispatches were broadcast; one notified units of a "loud party" at an apartment

complex, and the other indicated that the person causing the disturbance may have left the scene in a brown Jeep. The arresting officer testified that he had observed a Jeep of that description in the vicinity of the disturbance, that the driver was not committing any traffic violations, but that he stopped the vehicle anyway. In reversing the appellant's conviction, we stated that we did not think the officer had "specific, particular or articulable reasons to suspect that a felony or a misdemeanor involving danger of injury to persons or property had been committed." 16 Ark. App. at 86.

We distinguished *Van Patten* in *Reeves* v. *State, supra,* where we affirmed a conviction that followed an arrest made in an investigatory stop. In *Reeves,* the police dispatcher advised officers to be on the lookout for a Jeep, the driver of which was said to be shooting fireworks out of the window and was "possibly DWI." Not only a license number but the name of the vehicle's owner was given. The arresting officer testified that, after noticing that the appellant took an unusually long time to pull out of a parking lot onto a highway and verifying the license number, he followed the Jeep for four blocks. Because of the slow rate of speed at which the appellant was traveling and his occasional weaving, the officer concluded that the driver was probably under the influence of alcohol. On the basis of these combined factors, we held that the circumstances amounted to "specific, particularized, and articulable reasons indicating that the person or vehicle may [have been] involved in criminal activity." *Reeves,* 20 Ark. App. at 23. The totality of the circumstances in the present case also constitutes specific, particularized, and articulable reasons indicating that appellant was involved in criminal activity—driving while under the influence of alcohol.

Here, after receiving information about an altercation on a nightclub parking lot, Patrolman Jenkins broadcast a notice concerning a white male, armed with a club or similar weapon, driving a black Ford pickup truck. No license plate number was available. By itself, this description is as general in character as the brown Jeep in *Van Patten.*

What distinguishes this case from *Van Patten,* however, is the particular set of circumstances which, in our case-by-case approach, we now address. Appellant was not stopped for, nor

was he later charged with, the fight on the parking lot. Instead, Officer Clark witnessed him in a black Ford pickup driving around several curves in an erratic manner and taking one especially sharp one down the middle of the road. At this point the stop was made. We found an arresting officer's observation of a driver moving slowly and occasionally weaving sufficient as specific, particularized, and articulable reasons for concluding that the driver was operating his vehicle while intoxicated in *Reeves* v. *State, supra.* The basis for a reasonable suspicion of intoxication is no less compelling in the instant case.

It is important to emphasize that, once Officer Clark observed appellant's unsteady driving, the original reason for watching for a black Ford pickup—the parking lot brawl—receded to the point of secondary importance. Officer Clark testified that he had two purposes in stopping the truck; one was to investigate the incident at the nightclub, and the other was to apprehend a person who was apparently driving while under the influence of alcohol. However, Officer Clark stated that even if he had not received any information regarding the disturbance at the club, he probably would have pulled appellant over anyway because of his erratic driving.

Appellant points out that he was not charged with running a stop sign, despite Officer Wooley's testimony that he observed him fail to stop at a four-way stop sign. But Officer Wooley provided backup on the arrest, and the instances of irregular driving witnessed by Officer Clark amounted to sufficient cause to stop appellant on suspicion of DWI. As for appellant's insistence upon the fact that he was not speeding, we would simply note that in *Reeves* v. *State, supra,* no speeding was involved or traffic violations committed.

Under the totality of the circumstances test, we believe that the arresting officer acted properly in making an investigatory stop of appellant's truck and that the trial court committed no error in this respect.

Affirmed.

CORBIN, C.J., and JENNINGS, J., agree.