Benny WILLETT v. STATE of Arkansas

CR 88-205                                      769 S.W.2d 744

Supreme Court of Arkansas
Opinion delivered May 8, 1989

*Frank H. Bailey*, for appellant.

*Steve Clark*, Att'y Gen., by: *David B. Eberhard*, Asst. Att'y Gen., for appellee.

JOHN I. PURTLE, Justice. On September 13, 1988, the jury convicted the appellant of possession of a controlled substance with the intent to deliver and, as an habitual offender, he was sentenced to life imprisonment. He argues three points on his appeal: (1) the trial court erred in holding that the police had reasonable cause to stop and search the vehicle; (2) the trial court erred in sustaining the prosecution's objection to identification of the confidential informant; and (3) it was error to justify the search on the basis of "exigent" circumstances. We do not find prejudicial error. The conviction is affirmed.

Officer Lyle Scott, a detective for the Mountain Home Police Department, testified that during the six months prior to the arrest of the appellant on the present charge, he had received information from four or five sources that the appellant and his co-defendants were dealing in cocaine. Between January 19 and 22, 1988, two confidential informants told him that the co-defendants were making weekly trips to Jonesboro for the purpose of picking up cocaine to be brought back to Mountain Home and sold. The informants told him that the defendants would be driving a late model white pick-up truck or a gray primer-colored Pontiac GTO, and that both vehicles were kept at Ray's Auto Repair. The informants further told him that the

supplies went quickly, but that if any was left after the initial sale it was kept in a toolbox at the repair shop. Scott was informed by one of the two confidential informants that he had overheard the co-defendants talking in a local cafe and that he understood they would be going to Jonesboro on January 22nd to get more cocaine. The confidential informants also informed Scott that the defendants usually carried handguns while making a delivery or picking up the cocaine. On the 22nd Scott and another officer drove by Ray's Auto Repair and saw two or three people standing near a late model white pick-up and gray primer-colored Pontiac GTO. The officers then went to a restaurant named Bobby Sue's Dawg House, expecting the suspects to come by and eat before leaving for Jonesboro. The officers were surprised when the suspects did not show up and after waiting for forty-five minutes went back to the repair shop where they found a "closed" sign and the gray Pontiac missing.

Being unable to locate the vehicles in the Mountain Home area, Scott contacted the sheriff's department and a surveillance was established on the roads going to Jonesboro. About 6:30 p.m. the gray Pontiac was observed at the intersection of Highways 5 and 177, near Mountain Home. Officer Parnell had been assigned to the surveillance team and upon noticing the GTO, he fell in behind it. He followed the GTO along the highway until it turned off on the Tracy Ferry Road. While following the car Officer Parnell observed the appellant, in the backseat of the GTO, apparently attempting to hide something. He also observed the passenger on the right front apparently trying to hide something. He turned on his blue light and stopped the vehicle at that time. Two other officers came immediately and helped Parnell place the suspects under arrest and conduct a search of the vehicle. Handguns and controlled substances, including cocaine, were found in the vehicle.

The state refused to identify the confidential informants and after a hearing the trial court agreed with the state. Motions to suppress the evidence were denied. At the pretrial hearing the foregoing information was presented by Officers Scott and Parnell. Officer Bill Beach, narcotics investigator for the state police, testified that he had been working with Scott and that he had received the same information presented by Scott.

The appellant's first argument for reversal is that the court erred in finding the authorities had probable cause to search his vehicle and seize the items therein. He admits, however, that if the facts of this case meet the requirements of a vehicular search as authorized by A.R.Cr.P. Rule 14.1, that it was a valid search. The pertinent part of Rule 14.1 reads as follows:

> (a) An officer who has reasonable cause to believe that a moving or readily movable vehicle is or contains things subject to seizure may, without a search warrant, stop, detain, and search the vehicle and may seize things subject to seizure discovered in the course of the search where the vehicle is:
>
> (i) on a public way or waters or other area open to the public . . . .

Therefore, if the facts and circumstances reveal that the officers had reasonable cause to believe that drugs were contained in the GTO, it was a legal search and seizure.

The state has the burden of proof in this case because it was a warrantless search. *Henry* v. *State*, 278 Ark. 478, 647 S.W.2d 419 (1983). The success of the search will not validate the search if it was unlawful in its inception. *Walton* v. *State*, 245 Ark. 84, 431 S.W.2d 462 (1968). The test for reasonable cause for stopping and searching a vehicle depends upon the collective information of the police officers and not solely on the knowledge of the officer stopping the vehicle. *Tillman* v. *State*, 271 Ark. 552, 609 S.W.2d 340 (1980). An officer has the right to stop a vehicle and make a warrantless search if it is on a public highway and he has reasonable cause to believe the vehicle contains evidence subject to seizure and the circumstances require immediate action to prevent destruction or removal of the evidence. *Tillman* v. *State*, 275 Ark. 275, 630 S.W.2d 5 (1982). Reasonable cause as required by A.R.Cr.P. Rule 14.1 exists when the officers have reasonably trustworthy information, which rises to more than mere suspicion, that the stopped vehicle contains evidence subject to seizure and a person of reasonable caution could be justified in believing an offense has been committed or is being committed. *Mitchell* v. *State*, 294 Ark. 264, 742 S.W.2d 895 (1988). The right to search and the validity of the search are dependent on the reasonableness of the cause the searching officer has for believing

that the contents of the automobile constitute a violation of the law. *Rowland* v. *State*, 262 Ark. 783, 561 S.W.2d 304 (1978).

■■ On appellate review this court makes an independent determination based upon the totality of the circumstances. *Campbell* v. *State*, 294 Ark. 639, 746 S.W.2d 37 (1988). In the present case at least two officers had received several tips from informants that the appellant and his associates were involved in drug dealing. Some of the tips were from sources which were not known to be reliable by the officers. However, nothing prevents an officer from investigating the information furnished to him by even an anonymous phone call. In *Burks* v. *State*, 293 Ark. 374, 738 S.W.2d 399 (1987), we stated:

> The anonymous tips in the present case were of value to the officers in making their initial investigation. Generally speaking, an officer would indeed be foolish to ignore an anonymous tip. So long as the officer does not invade the privacy and freedom of others, he is free to investigate any police matter in any manner not prohibited by law.

The information received by the officers in the present case was neither prohibited nor illegal. Therefore, they were free to use the information in their investigation in any manner which they deemed proper.

■ The officers did not act solely upon the advice given by the confidential informants. Such information was used as a catapult to launch a more intensive investigation. As it turned out, most of the information furnished by the informants was true. However, the information was not used as the basis for an arrest and seizure but rather to aid in further investigation. Reasonable cause may be based upon a combination of verified information furnished by anonymous callers and evidence gathered by the police in furtherance of an investigation of the subject matter. *Illinois* v. *Gates*, 462 U.S. 213 (1983). The facts in the present case are quite similar to those in *Gates*, inasmuch as the anonymous letter in *Gates* informed the officers of pending drug transactions. In the present case unidentified informants notified the officers orally that the appellant was about to undertake additional drug dealing operations. The basic holding of the *Gates* opinion abandoned the "two-prong test" of *Aguilar* v. *Texas*, 378 U.S. 108 (1964), and *Spinelli* v. *United States*, 393

U.S. 410 (1969), in favor of the "totality of the circumstances" test.

The officers in *Gates* acted upon the anonymous letter by investigating the allegations contained in the letter. As it turned out the statements in the anonymous letter proved true up to a point.

> Informant's tips, like all other clues and evidence coming to a policeman on the scene, may vary greatly in value and reliability. Rigid legal rules are ill-suited to an area of such diversity. One simple rule will not cover every situation.

*Illinois* v. *Gates*, supra.

The *Gates* decision recognized that unproven allegations or informant's tips may be corroborated by independent investigative work by the police.

The *Gates* opinion did not open the floodgates to mass arrests based upon anonymous and unverified tips. It dealt with one single anonymous letter giving many details of conditions existing at the time the letter was written and projecting future actions to be taken by Gates and his wife. The investigating officers verified several of the tips. All of them proved accurate and reliable. The investigation could not cover what had not yet happened. The decision held that the magistrate issuing the search warrant was justified in placing some reliance on the anonymous letter in view of the affidavit by the police that most of the statements in the letter already had proven accurate.

In the case before us, whether acting on their own or through the use of the tips, the officers spotted the vehicles which were allegedly used on the drug trafficking trips. Although the police would not have been authorized to obtain a warrant based solely upon the information furnished by the unidentified informants, they would have been doing less than their duty had they not investigated the allegations. Although they may have been acting on a mere suspicion at the time they started the surveillance, the suspicion rose to reasonable cause before the vehicle the appellant was riding in was stopped. Most police investigations, no doubt, start with only suspicion. The activity observed by the officer chasing the GTO, along with his prior knowledge, was sufficient to allow a stop of the vehicle. Circumstances excusing

the search without a warrant are exigent when they involve danger to the officers or risk of loss or destruction of evidence. *Moore* v. *State*, 268 Ark. 171, 594 S.W.2d 245 (1980). Certainly the facts and circumstances of this case are sufficient to allow a search pursuant to Arkansas Rules of Criminal Procedure Rule 14.1(a)(i).

The second argument offered by the appellant is that the court improperly refused to allow identification of the confidential informants. This issue has been discussed in the first argument for reversal. Since the arrest and search and seizure were not conditioned upon the information of the confidential informants, it is not necessary to discuss this issue at length. See *Illinois* v. *Gates*, supra. The informants in the present case neither witnessed the crime nor participated in it in any manner. Therefore, it was not necessary to reveal their identity. See *Treadway* v. *State*, 287 Ark. 441, 700 S.W.2d 364 (1985); and A.R.E. Rule 509.

The third argument by the appellant is that the court erred in finding exigent circumstances. This argument has also been disposed of under the first point. The plain wording of A.R.Cr.P. Rule 14.1 authorizes the search and seizure of items in a vehicle if the vehicle is stopped pursuant to the provisions of that rule. We explained reasonable cause for stopping a vehicle in the first part of this opinion and will not discuss it again at this time.

Although anonymous tips standing alone do not constitute reasonable or probable cause, information verified as a result of such tips may support reasonable cause and may be acted upon as though the tips had never been received. In the present case the investigating officers obtained objective evidence in support of their belief that reasonable cause to stop the vehicle existed. The stop and search in this case were not based upon mere conjecture and speculation nor mere suspicion. The search was based upon evidence which confirmed the information furnished by the confidential informants. The reliability of the informants was not an issue under the facts in this case. The arrest may have resulted, at least in part, from the anonymous tips, but it was based upon the observations and information established by the police during their investigation of the facts. Therefore, there was no prejudicial error in the trial court and the conviction is

affirmed.

HICKMAN, J., concurs.

HAYS, J., dissents.

STEELE HAYS, Justice, dissenting. I must disagree with the majority on its finding of probable cause for a search of appellant's vehicle. My disagreement is twofold: the first being the lack of knowledge of probable cause by the arresting officer, Parnell, who made the stop and conducted the search. The majority states that the police were initially acting on a mere suspicion at the time they started the surveillance but that it rose to reasonable cause by the time the vehicle was stopped—that "the activity observed by the officer chasing the GTO, *along with the his prior knowledge*, was sufficient to allow a stop of the vehicle." [My emphasis.]

The problem here is that Parnell had no prior knowledge to add to his observation of activity in the vehicle. The only information that had been been relayed to him was that there was a gray '66 to '68 GTO with two suspects in it; that the suspects could be armed and would probably run; and that he was to follow them until he could get a backup. No other information regarding the prior investigation had been communicated to Officer Parnell.

The investigation of this matter had been carried on by officers Beach and Scott and prior to the stop of appellant's vehicle, the information they had was admittedly insufficient for any stop. The suspicious activity observed by Parnell was therefore critical to having a sufficient basis. Beach and Scott, however were never informed of the activity observed by Parnell, nor was Parnell involved in the investigation or in a sharing of the previous information gathered by Scott and Beach. The record reveals that Parnell was apparently called off of some other duty for this particular surveillance effort, and then was given only a description of the car and a directive to follow the vehicle and, at most to conduct a *Terry* stop. Lacking knowledge of the details of the investigation to that point, there was no way Officer Parnell could have added his observations of activity in the vehicle to the other officers' information and produced a sufficient basis to stop.

While we have made reference to the "collective knowledge" of the police as a legitimate basis for probable cause, as the

majority briefly notes, citing to *Tillman* v. *State*, 271 Ark. 552, 609 S.W.2d 340 (1980), it has not been used in the sense suggested by this case. That is, it has not referred to the finding of probable cause through a piecemeal collection of information from various police officers where no one officer has put that information together to find probable cause. Rather, as in *Tillman*, it has referred to a finding of probable cause when the arresting officer lacks any basis for such a conclusion, but has been directed to make an arrest or search when someone else in the department does have such information. Or as in *Perez* v. *State*, 260 Ark. 438, 541 S.W.2d 951 (1976), where an officer has found probable cause not from his own personal knowledge but from data collected from others in his department. *See also Woodall* v. *State*, 260 Ark. 786, 543 S.W.2d 957 (1976); *Jones* v. *State*, 246 Ark. 1057, 441 S.W.2d 458 (1969). In the case before us, neither the investigating officers nor the arresting officer had enough information individually to support a search. Only by an exchange of information could there have been any possibility of finding grounds for a search by Parnell.

The danger in the method approved in this case is quite obvious. It encourages arrests and searches where there is an insufficient basis, in hopes that an after-the-fact inquiry will turn up additional information to support the police action. "To say in the abstract that probable cause is to be evaluated on the basis of the collective information of the police ignores the underlying assumption—and factual reality—that there is some communication between those officers, who do know facts amounting to probable cause, and those who do not . . . If no officer connected to the arrest knows the facts which might justify it, no officer exercises the judgment required as a substitute for judicial approval. Information scattered among various officers in a police department cannot substitute for possession of the necessary facts by a single officer related to the arrest." *State* v. *Cooley*, 457 A.2d 352 (Del. 1983). "[T]he fellow officer rule . . . is not a means of creating probable cause by using post hoc combinations of information available to the police. The rule does not permit the police to call its archives in hopes of justifying an arrest which is not supported by probable cause." *People* v. *Hazlehurst*, 662 P.2d 1081 (Colo. 1983).

The burden of proof is allocated to the state when a

warrantless search has occurred, and the state must prove the source of its information and the means of its acquisition. *Rowland* v. *State*, 262 Ark. 783, 561 S.W.2d 304 (1978). The state failed in this case and I would reverse on the basis discussed above. But even if we were to somehow impute the officers' knowledge, one to the other, I would still reverse because the cumulative information of all the officers was insufficient to make a finding of probable cause to support a search.

The majority relies on *Illinois* v. *Gates*, 462 U.S. 213 (1983), for the proposition that an anonymous tip will support the probable cause requirement if there is sufficient corroboration of the tip by independent observation by the police. In *Gates*, the police received an anonymous letter stating that a named couple sold drugs; that the wife would drive to Florida, leave the car and fly back; the husband would then fly to Florida and drive back with the purchased drugs; and that another such trip was about to occur. A few days later the police determined that the husband had flown to Florida and had gone to a hotel where he met his wife. The next day they were both observed leaving in their car heading in a northerly direction toward their home. The court held there was probable cause to support a search warrant. It found: the activity suspicious because Florida was well-known as a source of illegal drugs; the police corroborated several details given in the letter; and the details corroborated concerned future activities which were not easily predicted.

While *Gates* has been criticized as providing a questionable basis for supporting a search warrant, 1 LaFave, *Criminal Procedure*, § 3.3(c), the facts in our case don't even meet the minimum standard of *Gates*. The only information from the tip that was corroborated by the police was that two individuals would leave in a certain car around noon and would return later in the day from the direction of Jonesboro. There was simply nothing untoward about the activity observed and only the most minimal of details corroborated. Neither did the information reveal any future activity that could not be easily predicted. All the police had was that two men had probably gone to Mountain Home on that particular afternoon. If we add to that Officer Parnell's observation that two individuals in the car appeared to be moving around or hiding something, there was arguably a basis for a *Terry* stop, but no more. *See U.S.* v. *White*, 648 F.2d 29

(D.C. Cir. 1981), for a discussion of the quantum of evidence needed for a *Terry* stop and what is needed beyond that to "boost" the case into one constituting probable cause.

Here, the evidence presented by the state had to be sufficient to support a probable cause test or nothing at all. There were no preliminaries by Parnell in the way of an investigatory stop that revealed further facts that would in turn justify a search. *See e.g., Reeves v. State,* 20 Ark. App. 17, 722 S.W.2d 880 (1987). Rather, Parnell simply stopped the vehicle, had the occupants get out, and without further discussion or questioning undertook a search of the automobile.[1] Even if we were to assume, which I could not, that Parnell had knowledge of the other officers' information, the sum of data available to the police did not constitute an adequate basis to support the full-scale search that was undertaken and the motion to suppress in this case should have been granted.

---

[1] It appears from the record that Parnell had made this decision on his own or had misunderstood the directive. Officer Beach who was in charge or directing the surveillance effort indicated that no authorization for a search had ever been given:

Q: Now, when you set up this trap to stop the car, the directions were if you saw a gray primer Pontiac GTO coming from the direction of Jonesboro, stop it?

A: Basically, yes, sir.

Q: You used traffic stop in your direct?

A: Yes, sir.

Q: So these officers that were placed out here were to make a stop?

A: That's correct.

***

Q: Now when they stopped this vehicle, they were to search the vehicle to see if there was any contraband in the vehicle?

A: No sir. We didn't give anyone any particular instructions to search. The vehicle was supposed to be stopped, but by the time that we had responded to where the vehicle had been stopped, it had already been searched.