216 N.J. Super. 280 (1987)
523 A.2d 678
STATE IN THE INTEREST OF A.R., A JUVENILE.
Superior Court of New Jersey, Appellate Division.
Submitted February 11, 1987.
Decided March 24, 1987.
*282 Before Judges FURMAN, DREIER and SHEBELL.
John H. Stamler, Prosecutor Union County, Attorney for appellant (Steven J. Kaflowitz, Assistant Prosecutor, of counsel and on letter brief).
Alfred A. Slocum, Public Defender, Attorney for respondent (Felix R. Orraca, Assistant Deputy Public Defender, of counsel and on the brief).
The opinion of the court was delivered by DREIER, J.A.D.
The State appeals by leave granted from an order suppressing the evidence of the contents of a pouch found in the possession of the juvenile, A.R. The juvenile was charged with delinquency on the basis of two counts charging offenses which would constitute possession of a controlled dangerous substance and one count charging an offense which would constitute *283 possession of drug paraphernalia if brought against an adult.
The trial judge by a comprehensive decision and order dated August 18, 1986 suppressed the evidence, consisting of .147 grams of cocaine in a glass vial with a small silver spoon attached and.102 grams of marijuana in the form of a hand rolled cigarette. The police discovered these items in a small leather pouch found in the juvenile's right front coat pocket during the course of a pat-down on the street.
We accept the 26-paragraph factual findings of the trial judge. The facts demonstrate that police stopped three youths on the street in the vicinity of a school after receiving a tip from a reliable informant that four named juveniles would be involved in narcotic activity in that vicinity. Three of the four named juveniles, known to the arresting officers, were observed walking to the school. They stopped walking only after a second call from the officers, one of whom saw one of the other juveniles, D.K., move something from one pocket to another. Upon examination, the item removed was determined to be a box containing a partially smoked marijuana cigarette, whereupon D.K. was arrested. One of the officers then patted-down the other juveniles. A pat-down disclosed neither weapons nor drugs on the second of the trio and he was permitted to leave.
A.R. continued to stand with his hands in his pockets and was instructed to remove his hands so that the officer could conduct the pat-down. Initially A.R. would only remove his left hand. Over A.R.'s verbal protest, the officer removed A.R.'s right hand from his pocket and conducted the pat-down, discovering a square object which was removed by the officer. The object was then observed to be a soft black leather case with a snap, three inches by four to five inches, normally used to carry film. As a result of his background and training in narcotic law enforcement, the detective recognized the pouch as similar to cases frequently used to hold narcotics. The officer then *284 opened the pouch and determined it to contain cocaine and marijuana which were the subject of the motion to suppress. The officer had arrested A.R. three years before for the possession of a B.B. gun, and he justified the pat-down search as one to protect his own safety.
In granting juvenile's motion to suppress the evidence seized in the search, the trial judge made an intensive and cogent analysis of New Jersey and Federal authority as established in State v. Bruzzese, 94 N.J. 210 (1983), cert. den. 465 U.S. 1030, 104 S.Ct. 1295, 79 L.Ed.2d 695 (1984); State v. Esteves, 93 N.J. 498 (1983); State v. Alexander, 191 N.J. Super. 573 (App.Div. 1983); and State v. DeLorenzo, 166 N.J. Super. 483 (App.Div. 1979), interpreting, among other cases, United States v. Place, 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983), Arkansas v. Sanders, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979); United States v. Chadwick, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977); and Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). She concluded that although the pouch could properly have been removed from the juvenile's pocket, it should not have been opened without a warrant. We agree with the trial judge's analysis up to her final conclusion. In fact, her analysis as to the propriety of the stop and frisk and the removal of the pouch parallels that of our Supreme Court in State v. Davis, 104 N.J. 490 (1986), decided three months after her opinion.
The circumstances of the stop, specifically, the informant's tip, the possession of CDS by a companion and A.R.'s attempt to avoid the pat-down, and the pouch being of a type known by police to be used by youths to hold drugs and drug paraphernalia, taken together certainly provided sufficient grounds for police briefly to detain A.R. and the pouch found on him to investigate suspected criminal activity. United States v. Sharpe, 470 U.S. 675, 686-87, 105 S.Ct. 1568, 1576, 84 L.Ed.2d 605, 616 (1985); United States v. Place, supra, 462 U.S. at 706, 103 S.Ct. at 2644, 77 L.Ed.2d at 120; State v. *285 Alexander, supra, 191 N.J. Super. at 576-577. But these circumstances and facts observed by the detective were also sufficient to find probable cause, i.e., to warrant a reasonable belief that a crime had been or was being committed. State v. Doyle, 42 N.J. 334, 346 (1964). Probable cause requires less evidence than is necessary for a conviction; it is a "common-sense practical standard," State v. Novembrino, 105 N.J. 95, 120 (1987), a concept that justifies quick action by police to protect society. State v. Dilley, 49 N.J. 460, 464 (1967). Since neither we nor the trial judge had any doubt of the constitutionality of the stop and pat-down (see State v. Davis, supra, 104 N.J. at 505-507) and the seizure of the container, (see United States v. Place, supra, 462 U.S. at 706-707, 103 S.Ct. at 2644-45, 77 L.Ed.2d at 120-121), we must determine only whether the opening of the container violated the juvenile's Fourth Amendment rights under the doctrines established by Arkansas v. Sanders, supra, Illinois v. Lafayette, 462 U.S. 640, 103 S.Ct. 2605, 77 L.Ed.2d 65 (1983), and United State v. Chadwick, supra. These cases have been most recently discussed by the United States Supreme Court in the context of an automobile search in Colorado v. Bertine, ___ U.S. ___, ___, 107 S.Ct. 738, 741, 93 L.Ed.2d 739, 745-46 (1987), where the court reaffirmed the principle that except for well-defined areas of exceptions, warrantless searches are per se unreasonable under the Fourth Amendment.
In Illinois v. Lafayette, supra, the defendant was arrested for disturbing the peace and was taken to the police station where, without a warrant, a shoulder bag was opened and inventoried, revealing amphetamine pills. The Supreme Court noted that the inventory search constituted "a well defined exception to the warrant requirement." 462 U.S. at 643, 103 S.Ct. at 260, 77 L.Ed.2d at 69. In our case if the juvenile was subject to immediate arrest based upon probable cause that he was in possession of a controlled dangerous substance, the search on the spot would have been justified, since if he had been arrested and taken to headquarters, the pouch could *286 properly have been opened and its contents inventoried under Illinois v. Lafayette, supra. In that case, however, there had been a valid arrest, whereas in our case the arrest was occasioned only by the discovery of the drugs in the pouch. Yet the Supreme Court has stated that there is no requirement that search follow a formal arrest, so long as there is cause for the arrest prior to the search and the arrest follows immediately thereafter. See Rawlings v. Kentucky, 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980); United States v. Burnett, 526 F.2d 911, 913 (5th Cir.1976), cert. den. 425 U.S. 977, 96 S.Ct. 2179, 48 L.Ed.2d 801 (1976). The order of the search and arrest is not dispositive.
We must ask, however, whether it should be necessary for the police to follow the procedure suggested by the Family Part holding, given the size and nature of the pouch, and the circumstances at the scene. Should there be a requirement that the juvenile be detained and taken to police headquarters, whereupon the pouch would have been held while an application was prepared for a search warrant and then a judge located to sign the same? If an immediate search is permitted in these circumstances, and if in fact the pouch contained no narcotics, the juvenile would have been released immediately as his companion had been moments earlier. The intrusion upon the juvenile imposed by opening the pouch was minimal if the pouch contained no contraband[1].
The police may not arbitrarily stop citizens and effect searches. See State v. Kuhn, 213 N.J. Super. 275 (App.Div. 1986). But where there was an articulable suspicion to stop *287 and the "subsequent scope of the seizure was justified by the particular facts and circumstances of the case," State v. Davis, supra, 104 N.J. at 504, the minimal intrusion into juvenile's right of privacy here was warranted by the probable cause for A.R.'s arrest based upon the tip, his action, and the nature of the container known by the officer reasonably to have been a commonly used "packaging" for narcotics and drug implements. As noted in Illinois v. Lafayette, supra, and quoted in Colorado v. Bertine, supra:
Even if less intrusive means existed of protecting some particular types of property, it would be unreasonable to expect police officers in the everyday course of business to make fine and subtle distinctions in deciding which containers or items may be searched and which must be sealed as a unit. [462 U.S. at 648, 103 S.Ct. at 2610, 77 L.Ed.2d at 72].
The minimal intrusion and the ability to permit the youth to proceed on his way also distinguishes this case from United States v. Chadwick, supra, (and its progeny) where the search was conducted an hour after federal agents had gained exclusive control of a double locked footlocker and after the defendants were securely in custody. The search was not incidental to defendant's arrest nor justified under any other exigency[2]. By contrast, the container in the matter before us was a pouch of the type which by its use was unlikely to be serving as a repository for private personal items other than contraband, with the exception of its intended use for film. Since juvenile possessed no camera, the film case most probably was being used, in the expert opinion of the arresting officer, to transport drugs. Based upon the informant's information, the other factors noted earlier, and the officer's reasonable belief that the pouch contained narcotics, the officer had probable cause to arrest A.R. Where such probable cause exists, the extension of a lawful search to the opening of a small pouch, wrapping or the *288 like is minimally intrusive and operationally necessary for the investigation of suspected criminal activity. Compare Arizona v. Hicks, ___ U.S. ___, ___, 107 S.Ct. 1149, 1154, 94 L.Ed.2d 347, 355-56 (1987) (recognizing the legality of examining that which could have been seized if probable cause had existed in a search there unjustified by the "plain view" doctrine).
The legality of a warrantless search of a closed container or pouch has been upheld in several other jurisdictions on both the federal and state levels. Texas v. Brown, 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983) (probable cause existed where officer noticed opaque, green party balloon that he knew to be a common method of storing narcotics); United States v. Thornton, 733 F.2d 121, 127-128 (D.C. Cir.1984) (police observation of plastic package that resembles common method of packaging narcotics constituted probable cause justifying search of contents); United States v. Ricard, 563 F.2d 45, 49 (2d Cir.1977), cert. den. 435 U.S. 916, 98 S.Ct. 1471, 55 L.Ed.2d 507 (1978) (upholding warrantless search of tin foil packet found on defendant to contain cocaine). In Wright v. State, 418 So.2d 1087 (Fla.App. 1982), petition den. 426 So.2d 29 (Fla. 1983), the court upheld the search of a film canister found on the person of defendant who was suspected of conducting drug transactions on a public street corner. Like A.R. here, defendant in Wright was observed to engage in furtive activities and attempted to evade contact with police.
The distinction is fine, but one which we make in the interests of providing an accommodation between the right of citizens to be free from unreasonable searches and seizures, and the public's need for adequate law enforcement, unhampered by the necessity of obtaining a warrant to open virtually even the smallest package found on a suspect's person.
The order suppressing the contents of the juvenile's pouch is reversed and the matter is remanded for further proceedings.
NOTES
[1] We recognize that mere convenience of the suspect (as well as of the police and courts) is no substitute for constitutional compliance. Arkansas v. Sanders, supra, 442 U.S. at 764, n. 12, 99 S.Ct. at 2593, n. 12, 61 L.Ed.2d at 245, n. 12. We also note that the quality of the container cannot be the determining factor. In United States v. Ross, 456 U.S. 798, 824, 102 S.Ct. 2157, 2172, 72 L.Ed.2d 572, 592 (1982) the Court reiterated that there are no "worthy" or "unworthy" containers, where Fourth Amendment protections are concerned.
[2] The search could not be justified as a protective search. See In re State in Interest of D.S., 63 N.J. 541 (1973), reversing on Judge Botter's dissent, 125 N.J. Super. 278, 283, 286-287 (App.Div. 1973).