Edward Gene KAISER *v.* STATE of Arkansas

CA 87-281                                     746 S.W.2d 559[1]

Court of Appeals of Arkansas
En Banc
Opinion delivered March 23, 1988
[Rehearing denied April 27, 1988.[2]]

---

[1] [Reporter's Note: Judge Cracraft's dissenting opinion is printed at 753 S.W.2d 870.]

[2] Corbin, C.J., Cracraft and Cooper, JJ., would grant rehearing.

20

*Burris & Berry*, for appellant.

*Steve Clark*, Att'y Gen., by: *J. Brent Standridge*, Asst. Att'y Gen., for appellee.

BETH GLADDEN COULSON, Judge. Appellant, Edward Gene Kaiser, appeals an order of the Circuit Court of Randolph County requiring forfeiture of $10,000 and a .44-caliber magnum pistol confiscated when law enforcement officers stopped appellant's

car in a drug-trafficking investigation. Appellant contends that the search and seizure was unlawful, and that the evidence was insufficient to connect his property to unlawful activity. We disagree and affirm the forfeiture order.

On June 5, 1986, Randolph County Sheriff Steve Shults met with officers of the Missouri Highway Patrol and the Arkansas State Police at Pocahontas. The Missouri officers had received information from a confidential informant that a car transporting up to 50 pounds of marijuana and up to $25,000 in cash would be passing through the area. Sheriff Shults was told to watch for a 1979 Lincoln Town Car, gray or silver, with a Missouri license, KLN 436. The Missouri officers considered the informant very reliable. They also warned that the driver of the car was expected to be carrying a .44-caliber pistol, and that he had been arrested previously for assaulting a law enforcement officer.

About twenty-four hours later, the sheriff received a radio call to his patrol car that the Lincoln Town Car had been spotted and was heading in his direction. The car passed by, and the sheriff pulled behind it. He did not see any traffic violations or erratic driving, but the car matched the description and bore the Missouri license, KLN 436. The sheriff pulled the car over, and other police units converged on the scene, including some officers with a dog trained to detect drugs. The sheriff asked the Town Car's driver, appellant, to step out of the car, frisked him, and found a film canister in appellant's pocket. On opening the canister, the sheriff found what he believed was marijuana. The dog was brought to the car, and after the dog indicated that drugs were present in the passenger compartment and the trunk, the officers searched the car. They found a partly-burned marijuana cigarette in the passenger compartment. In the trunk they found bits of vegetable matter that they believed was marijuana residue. At that point, appellant was arrested for misdemeanor possession of a controlled substance. The pistol, the $10,000 in cash, and a set of cotton scales also were found in the trunk. On June 19, 1986, appellant pleaded guilty in municipal court to the possession charge.

The forfeiture proceedings were held on March 11, 1987, and appellant testified that he had not been transporting drugs. He said that he was returning to Missouri from Odessa, Texas,

where he had gone to shop for a truck, and that the $10,000 was for the truck purchase. He produced statements from two accounts—a withdrawal on March 6, 1986, and a transfer on April 8, 1986—that he said accounted for $9,000 of the cash found in his trunk. Appellant testified that the scales were an antique he bought on his return trip, and he introduced a roadside vendor's receipt for the purchase. Appellant also testified that he had been given some marijuana shortly before he travelled to Texas, and that was the reason marijuana was found in his car when he was stopped. Appellant's testimony about the purpose of his trip was corroborated by his wife and by a man who was a passenger in the car when it was stopped.

The state's case was based on the testimony of the sheriff and two Arkansas State Police officers who were at the scene of the stop, the seized items, and appellant's plea of guilty to misdemeanor possession. At the end of the state's case, appellant moved to dismiss the forfeiture petition on three grounds: (1) no probable cause had existed to stop and search the car, (2) the officers should have obtained a search warrant or appellant's consent, and (3) the evidence was insufficient to require forfeiture under Ark. Code Ann. § 5-64-505 (1987) [Ark. Stat. Ann. § 82-2629 (Supp. 1985).] The circuit judge found that the officers had reasonable suspicion to stop appellant's car, and given the reactions of the drug-detecting dog and the totality of the circumstances, the officers had probable cause to search the car without a warrant. The trial court also found that appellant had failed to rebut the presumption that money and paraphernalia are forfeitable when found in close proximity to forfeitable controlled substances or paraphernalia. From the circuit judge's decision, this appeal arises.

Crucial to appellant's case is whether the initial stop of his car falls within the web of exceptions to the warrant and probable cause requirements of the fourth amendment stemming from *Terry* v. *Ohio*, 392 U.S. 1 (1968). Recently, in *Miller* v. *State*, 21 Ark. App. 10, 727 S.W.2d 393 (1987), this court reiterated the principle that the fourth amendment protection against "unreasonable searches and seizures" extends to persons driving down the streets. It has been held, however, as we observed in *Miller*, that consistent with *Terry, supra*, police may stop persons on the street or in their vehicles absent a warrant or

probable cause under limited circumstances. One of those limited circumstances involves the investigatory stop. *Miller, supra.* Appellant argues incorrectly that this case is controlled by *Little Rock Police Department* v. *One 1977 Lincoln Continental and Fred B. Sands,* 265 Ark. 512, 580 S.W.2d 451 (1979), a case involving the proper basis for probable cause, not involving the basis for an investigatory stop. A law enforcement officer may make an investigatory stop based on reasonable suspicion that a person is committing, or about to commit (1) a felony, or (2) a misdemeanor involving danger to the public or damage to property. A.R.Cr.P. 3.1, and *Miller, supra.* In determining the reasonableness of the officer's suspicion, A.R.Cr.P. Rule 2.1 provides the following definition:

> "Reasonable suspicion" means a suspicion based on facts or circumstances which of themselves do not give rise to the probable cause requisite to justify a lawful arrest, but which give rise to more than a bare suspicion; that is, a suspicion that is reasonable as opposed to an imaginary or purely conjectural suspicion.

The most common basis for an investigatory stop seems to be when, as in *Terry, supra,* and *Miller, supra,* a patrolling officer observes suspicious conduct. However, the United States Supreme Court has held that a stop may be based on information received through police channels. *United States* v. *Hensley,* 496 U.S. 221 (1985). In *Hensley,* the Court stated:

> In an era when criminal suspects are increasingly mobile and increasingly likely to flee across jurisdictional boundaries, this rule is a matter of common sense. . .

When an informant is the source of the information that results in one law enforcement agency requesting another agency to stop a suspect, the officers who originally dealt with the informant must have reasonable suspicion to stop the suspect. *Hensley, supra.* The question of the reasonableness of a stop based on information received from an informant was reached in *Adams* v. *Williams,* 407 U.S. 143 (1972). In that case, a police officer stopped a suspected drug dealer on the basis of an informant's tip and the stop was proper in part because the information given by the informant was verifiable by the officer's observations. In the instant case, the stop of appellant was based on information

gained from an informant. Appellant's vehicle appeared in the area within the predicted period of time, matched the description given, and bore the predicted license plates. Those details were sufficient indicia of the informant's reliability to create a reasonable suspicion, permitting an investigatory stop of appellant's vehicle.

Appellant also argues that the officers had twenty-four hours to obtain a warrant and should have done so. But, as we have held elsewhere, investigatory stops may be conducted without a warrant. *Miller, supra*. Furthermore, an investigatory stop has been upheld that occurred several days after one law enforcement agency sent a bulletin asking another agency to stop a suspect. *Hensley, supra*. We conclude that appellant's vehicle was subjected to a proper investigatory stop. We also emphasize the limited nature of such stops. This policy consideration appears in A.R.Cr.P. 3.1, which states in part that:

> An officer acting under this rule may require the person to remain . . . in the officer's presence for a period of not more than fifteen (15) minutes or for such time as is reasonable under the circumstances. At the end of such period the person detained shall be released without further restraint, or arrested and charged with an offense.

In appellant's case the progression of events following the lawful stop led to probable cause for searching appellant's car and for his arrest. First, the sheriff was justified in asking appellant to step out of the car. Concerns for the safety of law enforcement officers permit an officer to require a suspect to step out of a vehicle when there are reports that the suspect is armed and dangerous. *Pennsylvania* v. *Mimms*, 434 U.S. 106 (1977). Similar concerns permit a pat down, or frisk, of a suspect, *Terry, supra*. Although it may have been improper for the sheriff to have opened the film canister he took from appellant's pocket, that does not affect the search of the car, or the arrest. The exclusionary rule has been held not to apply when probable cause is developed from an independent source. *Segura* v. *United States*, 468 U.S. 796 (1984). Independent grounds existed for searching appellant's car under the totality of the circumstances—including the reaction of the trained dog and the information gained from the informant. When the search resulted in discovery of a partly

burned marijuana cigarette and apparent marijuana residue, the sheriff had probable cause to arrest appellant.

Appellant's final point for reversal is that the evidence was insufficient to require forfeiture under Ark. Code Ann. § 5-64-505 (1987) [Ark. Stat. Ann. § 82-2629 (Supp. 1985)]. To prevail the state must demonstrate that the money was "in close proximity," that is, "very near" forfeitable controlled substances or forfeitable drug manufacturing or distributing paraphernalia. *Limon* v. *State*, 285 Ark. 166, 685 S.W.2d 515 (1985). The burden of proof is a preponderance of the evidence, and the trial judge's findings will not be set aside unless clearly erroneous. *Limon, supra.* Given the evidence, particularly the scales, apparent marijuana residue in the trunk, and marijuana in the passenger compartment, we affirm the order that appellant forfeit the money found in the trunk of the car. For the same reasons, we affirm the judgment of the trial court that the pistol, ammunition, and other items associated with the pistol were used in transportation of drugs and were forfeitable.

Affirmed.

CORBIN, C.J. and COOPER and CRACRAFT, JJ., dissent.

GEORGE K. CRACRAFT, Judge, dissenting. I agree with both points of Judge Cooper's dissenting opinion but wish to elaborate on the first. In this case, none of the officers testifying at the trial had any independent knowledge giving rise to a reasonable suspicion that the appellant was engaged in criminal activity at the time he was stopped. All were acting in total reliance on the assertion of the Missouri State Police that they had obtained knowledge from an informant giving rise to such a suspicion. The Arkansas officers never questioned that assertion and their actions were based entirely upon it.

I agree with the majority that the officers actually making a stop are not required to have independent knowledge giving rise to a personal suspicion but may rely on suspicions of a fellow officer or another agency which are based on personal knowledge. Where I depart from the majority is their assumption that there was established in this case an articulable reason for the Missouri officers' original suspicion. *United States* v. *Hensley*, 469 U.S. 221 (1985), does hold that one agency may rely on those

reasonable suspicions possessed by another agency, but it does not dispense with the requirement that there be a reasonable basis for the suspicion of the issuing agency. The Court makes that clear in the following language:

> Assuming the police make a *Terry* stop in objective reliance on a flyer or bulletin, we hold that *the evidence uncovered in the course of the stop is admissible if the police who issued the flyer or bulletin possessed a reasonable suspicion justifying a stop,* United States v. *Robinson, supra,* and if the stop that in fact occurred was not significantly more intrusive than would have been permitted the issuing department.

*Hensley,* 469 U.S. at 233 (emphasis in original). In *Hensley,* the agency issuing the flyer proved a basis for its suspicion by offering testimony from an officer who interviewed the informant. The Court stated:

> On the strength of the evidence, the district court concluded that the wealth of detail concerning the robbery revealed by the informant, coupled with her admission of a tangential participation in the robbery established that the informant was sufficiently reliable and credible "to arouse a reasonable suspicion of criminal activity by [Hensley] and to constitute the specific and articulable facts needed to underly a stop."

*Hensley,* 469 U.S. at 233—234 (citation omitted).

Here, however, we have no testimony of anyone purporting to have talked to the informant or any other information which would establish that the information obtained from the informant was sufficient to arouse the reasonable suspicion of criminal activity needed to underly a stop. There must be some evidence from some person as to precisely what was said by the informant. Only in that way can the trial court make the initial determination that there was the required specific, particularized, and articulable reasons for the suspicion on which the officers purported to act.

CORBIN, C.J., and COOPER, J., join in this dissent.

JAMES R. COOPER, Judge, dissenting. I dissent because I

believe the State failed to demonstrate that the information received by the police officers who stopped the appellant's vehicle provided them with a reasonable basis for suspecting that the appellant was committing a felony or a misdemeanor involving danger to the public or damage to property. The United States Supreme Court addressed the propriety of an investigatory stop based on information received through police channels in *United States* v. *Hensley*, 469 U.S. 221 (1985). *Hensley* involved a *Terry* investigatory stop made on less than probable cause by one police department, in reliance upon a "wanted flyer" issued by another police department, a situation analogous to that presented in the case at bar. The Supreme Court held that, where police make a *Terry* stop in objective reliance on a flyer or bulletin, "the evidence uncovered in the course of the stop is admissible if the police who *issued* the flyer or bulletin possessed a reasonable suspicion justifying a stop. . . ." 469 U.S. at 233 (emphasis in the original).

The majority holds that the investigatory stop in this case was proper because the informant's detailed description of the appellant's vehicle, as related to the Missouri state troopers, was verified by the observations of the Arkansas police who made the stop. It is important to remember, however, that those observations did not, of themselves, give the Arkansas policemen cause to suspect the appellant of criminal activity. I submit that, under the circumstances of this case and under the rule enunciated in *Hensley*, the observations of the Arkansas police have no bearing on the propriety of the investigatory stop: instead, the inquiry should focus on whether the police *issuing* the information, i.e., the Missouri police, possessed a reasonable suspicion justifying a stop at the time the information was provided to the Arkansas police. *See* 469 U.S. at 232.

On the facts of this case, the question of whether the Missouri police had a reasonable suspicion to justify an investigatory stop turns on the reliability of the informant's tip. The *Hensley* Court agreed with the trial court's determination, based on testimony supplied by the police officer who interviewed the informant in that case, that the "informant was sufficiently reliable and credible 'to arouse a reasonable suspicion of criminal activity by [Hensley] and to constitute the specific and articulable facts needed to underly a stop.' " 469 U.S. at 233-34. In the

case at bar, however, evidence of the informant's reliability and credibility is virtually absent. The Missouri police officer who interviewed the informant did not testify, and evidence of the informant's reliability is limited to the testimony of Sheriff Steve Shults of Randolph County, Arkansas, to the effect that he did not know the Missouri troopers, that he did not inquire as to their source of information, and that he did not pursue the matter further after being told that the Missouri troopers had a confidential informant they believed to be very reliable. This testimony is inadequate to support a judicial determination that the Missouri police could reasonably suspect that the appellant was engaged in criminal activity justifying an investigatory stop. I would reverse.

Further, even if there existed reasonable cause to stop the appellant, in the absence of reasonable cause to believe that the appellant was engaged in the manufacturing, distribution, delivery or purchase of marijuana, there is no statutory basis for the forfeiture of either the handgun or the money found in the appellant's trunk. Arkansas Statutes Annotated § 82-2629(a)(6) (Supp. 1985) [Ark. Code Ann. § 5-64-505(a)(6) (1987)] establishes a rebuttable presumption that money found in close proximity to forfeitable controlled substances or forfeitable drug distributing paraphernalia is forfeitable as money used or intended for use in facilitating a violation of the Controlled Substances Act. I submit that the trial court erred in finding the handgun to be drug distributing paraphernalia; although the appellant admittedly had a small quantity of marijuana in his possession, there was no other evidence to support a finding that the handgun was intended for use in "delivering, importing, or exporting any controlled substance . . ." Ark. Stat. Ann. § 82-2629(a)(2) (Supp. 1985).

Nor do I think that the proximity of the money to a minute quantity of marijuana should constitute grounds for forfeiture in the absence of evidence that the money was used or intended for use in a drug transaction. Excluding the informant's tip, of unknown reliability, the forfeiture in the case at bar is based only on the presence of a scattering of a grass-like substance in the appellant's trunk. Even assuming, *arguendo*, that the evidence supports a finding that this substance was marijuana, the mere possession of a small quantity of a controlled substance, insufficient to give rise to a presumption of intent to deliver, should not,

of itself, provide a basis for forfeiture under § 82-2629. Although mere possession is sufficient ground for forfeiture of controlled substances under the statute, other types of property, not intrinsically contraband, are generally forfeitable only after a finding that they were used or intended for use in the drug trade; i.e., the production or distribution of controlled substances. *See* Ark. Stat. Ann. § 82-2629(a)(2), (4), (6), (7). In the absence of a quantity of marijuana sufficient to support such a finding or other evidence of involvement in drug trafficking, neither the handgun nor the money should be forfeited. *See State* v. *One Certain Conveyance*, 288 N.W.2d 336 (Iowa 1980).

CORBIN, C.J., and CRACRAFT, J., join in this dissent.