STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v. PETER
A. DEMETER, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted November 21, 1988—Decided March 7, 1989.

Before Judges PETRELLA, SHEBELL and LANDAU.

*Harold J. Curry*, attorney for appellant (*Bruce A. Jones*, on the brief).

*Richard C. Hare*, Warren County Prosecutor, attorney for respondent (*Frank J. Bucsi*, Senior Assistant Prosecutor, on the brief).

The opinion of the court was delivered by

SHEBELL, J.A.D.

Defendant Peter A. Demeter appeals from the denial of his motion to suppress incriminating evidence seized as a result of a warrantless search of his automobile. This evidence was used to support his conviction of possession of a controlled dangerous substance (methamphetamine) in violation of *N.J. S.A.* 24:21–20(a)(1).

At the suppression hearing, a patrolman of the Belvidere Police Department testified that he was on patrol duty on the evening of March 1, 1987, when defendant's van passed with its license plate light out. He signaled defendant to stop, and thereafter requested defendant's license, registration and insurance card. As the patrolman spoke to defendant he "observed a 35 millimeter film container lying on the storage area on the front console...." The officer saw no camera in the open area of the van but did not inquire as to whether defendant had one in the vehicle, asserting "I was able to fully observe the passenger compartment."

The patrolman, who had received narcotics training at county and state police facilities, testified that similar film containers had been involved in about half of his narcotics stops during his six years as a patrolman. The patrolman candidly admitted that he only stopped defendant because the van's license plate light was out and that there was no other reason he asked defendant to hand him the film canister except the officer's past experience which showed that a high percentage of such film containers, when found without cameras in the same area, contained controlled dangerous substances.

The patrolman claimed that defendant hesitated when "instructed" to hand him the film container and then volunteered that the container was for bridge tokens, a use the patrolman, in his previous experience, had run into with three vehicles that had film containers in them as the location was near a toll bridge to Pennsylvania.

Upon receiving the film container, the patrolman opened it, saw marijuana residue, and then smelled marijuana odor inside the container. As a result of these observations he instructed defendant to step out of the van and stand to the rear. The patrolman then leaned into the van to look for additional drugs. Underneath the driver's seat he found another 35 millimeter film container. This one contained a yellowish powder and

numerous small white crystals which defendant admitted were methamphetamine and a drying agent.

It is the established law of this State that a warrantless search is presumed to be invalid and that the State therefore has the burden of proving its reasonableness and validity. *State v. Valencia,* 93 *N.J.* 126, 133 (1983). The United States Supreme Court noted in *Terry v. Ohio,* 392 *U.S.* 1, 29, 88 *S.Ct.* 1868, 1884, 20 *L.Ed.*2d 889, 910–11 (1968), in the context of determining the reasonableness of protective searches for weapons, that the limitations which the Fourth Amendment places upon warrantless searches would "have to be developed in the concrete factual circumstances of individual cases." The prime theme of the Fourth Amendment is reasonableness. *See Delaware v. Prouse,* 440 *U.S.* 648, 653–55, 99 *S.Ct.* 1391, 1395–97, 59 *L.Ed.*2d 660, 667–68 (1979).

As was succinctly stated in *State v. Young,* 87 *N.J.* 132, 142–43 (1981):

> A minimal constitutional requirement for most government searches, whether with or without a warrant, is that the police have probable cause to suspect that a crime has been or is being committed. [Citations omitted]. The probable cause requirement cannot be dispensed with even if a search falls within one of the exceptions to the warrant requirement. [Footnote omitted].

We note first that there is no attempt to justify the initial seizure of the film container as a protective search or a search incidental to an arrest. *See Michigan v. Long,* 463 *U.S.* 1032, 103 *S.Ct.* 3469, 77 *L.Ed.*2d 1201 (1983). It is clear, under the facts presented, that the search and seizure of the second film canister was lawful provided the seizure and search of the first container was lawful. *New York v. Belton,* 453 *U.S.* 454, 101 *S.Ct.* 2860, 69 *L.Ed.*2d 768 (1981); *Chimel v. California,* 395 *U.S.* 752, 89 *S.Ct.* 2034, 23 *L.Ed.*2d 685 (1969).

■ Understandably the State's brief is somewhat indecisive as to whether it attempts to justify the seizure of the first film canister strictly under the "plain view" exception to the warrant requirement, or as being based on "probable cause" and falling under the automobile exception. The facts elicited at

the suppression hearing demonstrate that it was only the presence of the film canister which created the suspicion in the mind of the police officer that narcotics might be hidden within the closed container. The uncontroverted testimony of the police officer demonstrated that it was a common use for such airtight containers. The reported drug-related cases involving film canisters are virtually legion. *E.g., Kaiser v. State,* 24 *Ark.App.* 19, 746 *S.W.*2d 559, rev'd on other grounds 296 *Ark.* 125, 752 *S.W.*2d 271 (Ark.1988); *State in Interest of A.R.,* 216 *N.J.Super.* 280 (App.Div.1987); *Com. v. Kendrick,* 340 *Pa.Super.* 563, 490 *A.*2d 923 (1985); *State v. Luter,* 346 *N.W.*2d 802 (Iowa), *cert.* den. 469 *U.S.* 830, 105 *S.Ct.* 116, 83 *L.Ed.*2d 59 (1984), superseded by statute/rule 412 *N.W.*2d 568 (Iowa 1987); *People v. Holloway,* 416 *Mich.* 288, 330 *N.W.*2d 405 (1982), *cert.* den. 461 *U.S.* 917, 103 *S.Ct.* 1900, 77 *L.Ed.*2d 288 (1983); *State v. Anderson,* 316 *N.W.*2d 105 (S.D.1982); *State v. Paradis,* 46 *Or.App.* 625, 612 *P.*2d 753 (1980); *State v. Olson,* 46 *Or.App.* 373, 611 *P.*2d 695 (1980).

In order to satisfy the requirements of the "plain view" exception it was originally held necessary that it be "immediately apparent" to the police that the item in plain view is evidence of a crime, contraband or otherwise subject to seizure. *Coolidge v. New Hampshire,* 403 *U.S.* 443, 466, 91 *S.Ct.* 2022, 2038, 29 *L.Ed.*2d 564, 583 (1971). In *Texas v. Brown,* 460 *U.S.* 730, 741–42, 103 *S.Ct.* 1535, 1542–43, 75 *L.Ed.*2d 502, 513 (1983), the plurality, however, modified this requirement to mean that a police officer may seize an item in plain view where he has "probable cause to associate the property with criminal activity." (Emphasis omitted).

In *State v. Bruzzese,* 94 *N.J.* 210, 237–38 (1983), *cert.* den. 465 *U.S.* 1030, 104 *S.Ct.* 1295, 79 *L.Ed.*2d 695 (1984), our Supreme Court adopted as the law of New Jersey the requirement that to establish the plain view exception it need merely be shown that "the facts available to the officer would 'warrant a man of reasonable caution in the belief' [Citation omitted] that certain items may be contraband, or stolen property or useful as

evidence of a crime, it does not demand any showing that such belief be correct or more likely true than false."

We cannot take this adoptive language of our Supreme Court to mean that in circumstances such as this, where there is a total absence of any other factors giving rise to suspicion of criminal activity, that viewing a film container, which is more commonly legitimately possessed by law-abiding citizens but can also be put to a second and unlawful use for the hiding of drugs, justifies a police officer in demanding that possession of the container be turned over by its possessor. The absence of a camera in the immediate area, particularly when the officer makes no inquiry as to whether one is located somewhere in the vehicle, is insufficient to tip the scale in favor of causing one of reasonable caution to believe that contraband may be in the container.

The officer's asserted "belief" is mere conjecture or suspicion and at best a "hunch" in the circumstances presented here. The express purpose of a film canister is to hold film; indeed, it may be used to store a wide variety of legal items. The fact that a fringe element of our population may use this otherwise legitimate article to store narcotics should not, in the absence of other indicia of criminal activity, be an avenue to invade the rights of law-abiding citizens.

Every case that we have examined upholding the seizure of a film container has either involved furtive movement or suspicious activities on the part of the possessor or been incidental to the arrest of such person. *See State in Interest of A.R.,* 216 *N.J.Super.* at 286 (probable cause for arrest existed prior to the search and seizure of film pouch containing marijuana and cocaine and arrest followed immediately thereafter, making the search incidental to the arrest); *Kendrick,* 340 *Pa.Super.* at 567, 490 *A.*2d at 925–26 (defendant attempted to conceal film canister by tucking his hand under his body when approached by police officer); *Luter,* 346 *N.W.*2d at 805–06 (defendant removed film canisters from his pocket and threw them on the

ground when approached by police); *Holloway,* 416 *Mich.* at 292, 330 *N.W.*2d at 406 (police officers had arrest warrant for defendant and viewed film canisters while approaching defendant to arrest him); *Anderson,* 316 *N.W.*2d at 106 (police officer smelled burnt marijuana and viewed marijuana seeds in plain view prior to finding and opening film canister); *Paradis,* 46 *Or.App.* at 627, 612 *P.*2d at 754 (court distinguished facts in case before it where police had search warrant from situation where closed container is found in a motor vehicle in a warrantless search); *Olson,* 46 *Or.App.* at 376, 611 *P.*2d at 696 (police officer with warrant to search "shooting gallery" has probable cause based on defendant's presence at "shooting gallery" to remove film canister from defendant's person and open the canister).

■ Here, the State should not be heard to bootstrap its argument based upon the utterances of the defendant after he had been improperly called upon to turn over the canister or by the observations of the officer as to the "heft" of the canister after it improperly came into his possession. Under neither the "probable cause" standard nor the "plain view" standard as modified, did this officer have sufficient knowledge to believe that the canister was likely to be associated with criminal activity. His mere suspicion did not give him the right to demand or inspect the object as such conduct constituted a seizure. The dissent fails to recognize that "... the seizure and detention of property is itself an intrusion into the privacy interests of the possessor or owner and must be justified by probable cause...." *State v. Young,* 87 *N.J.* at 145. The officer's seizure of the film canister constituted an illegal seizure, and the occurrences which followed were the fruits of the poisonous tree. *Wong v. United States,* 371 *U.S.* 471, 83 *S.Ct.* 407, 9 *L.Ed.*2d 441 (1963).

The order denying the motion to suppress is reversed, and the matter is remanded to the Law Division for further proceedings consistent with this opinion.

LANDAU, J.A.D., dissenting.

I respectfully dissent. The majority has replaced the informed and objective standard required by *Terry*[1] and *Bruzzese*[2], with its own subjective and unavoidably insular appraisal of the facts presented to Officer Sweigart. It also has unnecessarily required the State to meet the additional burden of establishing a separate cause for suspicion, apart from that inherent in the subject item, in order to establish probable cause for a limited investigative encounter to dispel an objectively-based suspicion raised by that item.

Further elaboration of some of the facts in this case is required. Sweigart, a local police officer, did not just view, and then seize and search the film container. Neither did he search it on a hunch. He testified on direct, and in answer to the trial judge's probing inquiry, that about half of his drug arrests involved the use of similar film containers. The trial judge clearly accepted his credibility.

Sweigart also testified that when he saw no camera in the vehicle and asked Demeter to hand him the container, Demeter hesitated, then volunteered that he used it for bridge tokens. Thus, before he opened the container, the officer knew that it was not being used for its intended purpose of storing film. Presumably from the "heft" of the empty container, the officer also knew as he held the container that it did not contain tokens. Only then did Officer Sweigart open the container and discover the marijuana residue, which led to further search and discovery of the methamphetamine in another film container. *Compare State v. Waltz*, 61 *N.J.* 83, 88 (1972).

As observed in *State v. Davis*, 104 *N.J.* 490 (1986), "[a]n important factor to consider is whether the officer used the

---

[1]*Terry v. Ohio*, 392 *U.S.* 1, 29, 88 *S.Ct.* 1868, 1884, 20 *L.Ed.*2d 889, 910–911 (1968).

[2]*State v. Bruzzese*, 94 *N.J.* 210, 237–238 (1983), *cert.* den. 465 *U.S.* 1030, 104 *S.Ct.* 1295, 79 *L.Ed.*2d 695 (1984).

least intrusive investigative techniques reasonably available to verify or dispel his suspicion in the shortest period of time reasonably possible." *Id.* at 504. *See also State in Interest of A.R.*, 216 *N.J.Super.* 280, 286–287 (App.Div.1987).

There must, of course, be an objectively reasonable basis to justify even limited, step-by-step investigative activity such as that conducted by Sweigart. *Davis,* 104 *N.J.* at 505; *Bruzzese,* 94 *N.J.* 210 (1983); *Terry,* 392 *U.S.* at 29, 88 *S.Ct.* at 1884, 20 *L.Ed.*2d at 910–911 (1968).

I believe that the personal experience of Officer Sweigart, in which nearly 50% of his automotive drug arrests involved such film containers, constitutes such an objectively reasonable basis for suspicion, particularly when heightened by the fact that film and tokens had been ruled out as contents by the time the container was opened.

We must make our assessment of the probabilities, not based on our scholarly experience, but as understood by those versed in law enforcement. *Texas v. Brown,* 460 *U.S.* 730, 742, 103 *S.Ct.* 1535, 1543, 75 *L.Ed.*2d 502, 514 (1983); *Bruzzese,* 94 *N.J.* 210 (1983). *See also State v. Novembrino,* 105 *N.J.* 95, 162 (1987) (Handler, J. concurring); *Waltz,* 61 *N.J.* at 88 (1972); *State v. Contursi,* 44 *N.J.* 422, 431 (1965). Like it or not, Sweigart's testimony appears to have been accepted as true by the trial judge, who by his position was best able to gauge Sweigart's credibility. His testimony established that this kind of container was apt to contain illegal drugs by a factor far more than can fairly be characterized as a mere "hunch," as my colleagues have done. Indeed, the majority's citation of a long but concededly partial list of drug related cases in which 35 millimeter film containers figured shows, at the very least, that Sweigart's testimony was not inherently incredible.

Our rights are not unguarded. Among many protections, we have required that trial judges explore in a separate hearing the predicate for warrantless searches, at which the State bears

a heavy burden. We have also required that police officers use the least intrusive techniques in the shortest time possible. *Davis*, 104 *N.J.* 490 (1986).

The trial judge, as here, must assess the believability of each witness from his or her unique vantage point. I regret that the majority has chosen to ignore the statistical summary of film container involvement in Sweigart's drug arrests and the implicit acceptance of the credibility of this testimony by the trial judge.

Respectfully, I question whether my colleagues would have as readily suppressed evidence indisputedly establishing guilt, if Sweigart had observed a number of small wads of tinfoil, or a pack of 20 small plastic bags secured by an elastic band, or if a glass slab and razor blade was observed on the console. Each of these objects, of course, has numerous and legitimate public uses, but their commonly recognized employment in illicit drug use may send a more acceptable danger signal to the uninitiate, such as ourselves.

To Officer Sweigart, however, in light of his training and pragmatic experience, a film container unaccompanied by camera or film paraphernalia signaled the same kind of inherent suspicion as small tinfoil wads, packs of tiny baggies or other intrinsically innocent items which may be more familiarly accepted by judges as possessing a high degree of correlation with unlawful use of drugs.

I fear the consequences of requiring separate and independent indicia of criminal conduct as a prerequisite to permitting limited police search activity respecting a suspicious item, when the subject of that activity and suspicion has been involved in 50% of the drug arrests of an experienced police officer.

While probable cause is the minimal requirement for a constitutionally reasonable search of a readily movable vehicle stopped on the highway (*State v. Alston*, 88 *N.J.* 211, 231 (1981)), that probable cause must be demonstrated by reference to what an informed, trained and reasonably experienced police

officer would objectively have understood as probable cause. *Novembrino*, 105 *N.J.* at 162 (Handler, J. concurring); *Bruzzese*, 94 *N.J.* 210 (1983).

I believe that was demonstrated here, and would affirm.