266 N.J. Super. 651 (1993)
630 A.2d 396
DAVID RUSSELL, PLAINTIFF-APPELLANT,
v.
GEORGE T. COYLE, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued June 3, 1993.
Decided August 4, 1993.
Before Judges KING, LANDAU and THOMAS.
*652 Vincent P. Manning argued the cause for appellant (Schottland, Vernon, Aaron, Plaza, Costanzo & Manning, attorneys; Michael D. Schottland, of counsel; Mr. Manning, on the brief).
James D. Harris, Deputy Attorney General, argued the cause for respondent (Robert J. Del Tufo, Attorney General of New Jersey, attorney; Mr. Harris, on the brief).
The opinion of the court was delivered by KING, P.J.A.D.
This is an appeal by plaintiff from the grant of a motion for summary judgment in favor of defendant, a State Trooper, on the ground of qualified immunity. The action, brought under 42 U.S.C.A. § 1983, sought damages for illegal seizure of property. The Law Division judge concluded that there was no clear or apparent violation of plaintiff's constitutional rights established and that defendant's qualified immunity should prevail. See Anderson v. Creighton, 483 U.S. 635, 638, 107 S.Ct. 3034, 3037, 97 L.Ed.2d 523, 530-31 (1987); Kirk v. City of Newark, 109 N.J. 173, 181, 536 A.2d 229 (1988). We agree. The legality of the trooper's seizure of defendant's pill bottle in this case turned on the close factual point of when he first observed that the bottle did not have a proper prescription label on it  whether before or after he took it out of the open glove compartment of defendant's car. The courts "have recognized that it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and we have indicated that in such cases those officials  like other officials who act in ways they reasonably believe to be lawful  should not held personally liable." Anderson v. Creighton, supra, 483 U.S. at 641, 107 S.Ct. at 3039, 97 L.Ed.2d at 531. Although the State did not prevail on the motion to suppress in the criminal case, we are satisfied that the trial judge correctly determined that the defendant should prevail as a matter of law on his qualified privilege claim in the civil case.

*653 I
Plaintiff filed this civil complaint against Trooper Coyle on February 29, 1991 alleging a violation of his rights under the Fourth and Fourteenth Amendments to the U.S. Constitution, pursuant to 42 U.S.C.A. § 1983. No state law claims of any kind were asserted by plaintiff. The claim was based on an illegal seizure of a pill bottle on June 28, 1989 in Millstone Township, Monmouth County which followed the concededly legal motor vehicle stop of plaintiff's car for speeding.
After the stop on State Highway 33, Trooper Coyle asked plaintiff to produce his driver's license, insurance card and vehicle registration. Plaintiff handed over a New York driver's license and his insurance card but continued to search for the registration card in the glove compartment. While plaintiff searched, Coyle observed a translucent, amber-colored container with a white top in the glove compartment. He believed this was a "prescription legend bottle." Coyle asked Russell to leave the vehicle so that he could seize the container. Upon picking up the bottle, Coyle observed a "white and navy blue type of capsule" inside and then noticed that the bottle's label had been torn off.
Coyle requested plaintiff to accompany him to the nearby Hightstown State Police Barracks so that he could investigate the nature of the single capsule in the prescription bottle. Investigation concluded that the capsule was a controlled dangerous substance legally available only by prescription. Coyle then arrested plaintiff for possession of a prescription legend drug in violation of N.J.S.A. 2A:170-77.8, a disorderly persons offense, and possession of a controlled dangerous substance in violation of N.J.S.A. 2C:35-10(a)(1), a third-degree offense. The type of drug or pill remains unknown to us. Neither the container, the capsule, nor any laboratory analysis were ever produced in either the Municipal or Superior Court.
Plaintiff moved to suppress the evidence of the controlled dangerous substance based on an illegal seizure. On May 1, 1990 the Millstone Township municipal court judge conducted a hearing *654 on the motion. After hearing the testimony of Trooper Coyle, the municipal court judge denied plaintiff's motion to suppress, ruling that the seizure was justified under the "plain-view" exception to the Fourth Amendment Warrant clause.
Plaintiff then appealed to the Superior Court, Law Division. On August 17, 1990, after hearing oral arguments, Judge Kennedy reversed the municipal court judge's ruling and suppressed the evidence. Judge Kennedy found on the record de novo that Trooper Coyle did not know that the item in "plain view" was evidence of a crime or contraband until after he had seized the bottle and examined it. The judge stated, "there was no probable cause to associate that prescription bottle with criminal activity, especially in view of the fact that the officer did not see the label missing until after he pulled it out of the glove box. It was as simple as that." On December 11, 1990 the municipal court judge dismissed all charges against plaintiff. Plaintiff then filed this civil action. As noted, Trooper Coyle moved for summary judgment in the Law Division on the ground of qualified immunity. On August 7, 1992 Judge Kreizman granted his motion and dismissed the complaint.

II
Plaintiff claims that Judge Kreizman erroneously granted summary judgment dismissing his constitutional claim. He asserts that an issue of fact existed on the applicability of the claim of qualified immunity. He contends that no objectively reasonable police officer could have believed that he had a legal right to pick up the pill bottle from the glove compartment, where the bottle was in plain view, and examine it to see if there was a legal prescription label on it.
The judge found that although the trooper may have technically violated the Fourth Amendment when he seized the bottle, his conduct was "objectively legally reasonable" and not actionable as a constitutional tort. Plaintiff's appellate claim is two-pronged: (1) that the suppression motion ruling in his favor automatically *655 creates a jury question in the civil case, and (2) that the question of qualified immunity is so "fact-specific" that a jury must decide the matter. We disagree.
One leading text authority has accurately summarized present case law this way:
In Anderson v. Creighton, supra, the Court ruled that because warrantless searches by law enforcement officers are governed by qualified immunity, these searches could be unreasonable for Fourth Amendment purposes, but reasonable for the purpose of qualified immunity. This unusual sounding holding was based upon the premise that in some instances law enforcement officers might mistakenly but reasonably conclude that probable cause or exigent circumstances justified a warrantless search.
* * * * * * * *
Given the difficulties that frequently exist in determining whether particular searches or seizures comply with the Fourth Amendment, law enforcement officers who make an objectively reasonable determination that there is probable cause or exigent circumstances should be protected from individual liability, even if their judgment later proves to be erroneous. [1 Martin A. Schwartz and John E. Kirklin, Section 1983 Litigation § 9.22 at 558-61 (Wiley 1991).]
As our Supreme Court has stated, "the import of Anderson is to provide law enforcement officials with both a belt and suspenders to uphold the qualified immunity defense." Kirk v. City of Newark, supra, 109 N.J. at 184, 536 A.2d 229. "[A] clearly established law will not deprive a law enforcement official of the qualified immunity defense if, in light of the specific facts known by the official, he or she could reasonably believe that probable cause existed." Id. at 186, 536 A.2d 229.
Recognizing that all reasonable inferences must be given to the plaintiff for purposes of the summary judgment motion, Judge Kreizman concluded that Trooper Coyle's illegal seizure of the prescription bottle was nevertheless objectively reasonable in light of the obvious difficulties in making determinations of the constitutionality of particular searches or seizures. He analyzed the testimony this way:
The defendant initially observed a prescription bottle which appeared to not have a label altogether. Defendant seized the bottle without knowing if it contained pills or if there was no label around the container's entire circumference, not just the area he initially viewed.

*656 It is this very seizure that does not amount to probable cause to seize. However, as a matter of law, it cannot be said that the defendant acted objectively unreasonably in seizing same or that seizing the bottle was an action that the defendant should have known would be deemed illegal.
We conclude that this is a fair view of the factual record in this case. The judge's legal ruling properly accommodates judicial concerns for balancing the competing values at stake: the right of the citizen to privacy and the duty of the police to enforce the criminal laws. The police officer on the scene must make the instantaneous call in close cases. The range of permissible action must accommodate marginal cases sufficiently that fear of potential civil liability does not induce paralysis of action. Harlow v. Fitzgerald, 457 U.S. 800, 813-14, 102 S.Ct. 2727, 2736, 73 L.Ed.2d 396, 407-08 (1982). This reflects the fundamental principal that the public interest is not served by imposing liability on public servants for the good faith performance of their discretionary duties. Ibid.; Scheuer v. Rhodes, 416 U.S. 232, 242, 94 S.Ct. 1683, 1689, 40 L.Ed.2d 90, 100 (1974). Although qualified immunity was initially limited to actions taken in good faith, the United States Supreme Court has adopted an entirely objective standard to ensure that the immunity defense would "permit the resolution of many insubstantial claims on summary judgment." Harlow v. Fitzgerald, supra, 457 U.S. at 818, 102 S.Ct. at 2738, 73 L.Ed.2d at 410. In Harlow, the Court held that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Ibid.; see Kirk v. City of Newark, supra, 109 N.J. at 181, 536 A.2d 229.
In Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271, 278 (1986), the Court adopted an objective reasonableness test for law enforcement officers: a defendant "will not be immune if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that a warrant should issue; but if officers of reasonable competence could disagree on this issue, immunity should be recognized." Subsequently, *657 in Anderson v. Creighton, supra, 483 U.S. at 638, 107 S.Ct. at 3037, 97 L.Ed.2d at 530, the Court held that government officials will be shielded from civil damages liability "as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated."
In Anderson v. Creighton, id. at 641, 107 S.Ct. at 3039-40, 97 L.Ed.2d at 531, the plaintiff asserted a section 1983 claim against an FBI agent who conducted an unlawful, warrantless search of his home, looking for a bank robbery suspect. The Court held that "[i]t simply does not follow" from a conclusion that a specific search violated the Fourth Amendment that such search was not "objectively legally reasonable." Ibid. The Court reasoned that law enforcement officials will at times reasonably but mistakenly conclude that probable cause is present and that in such cases those officials should not be held liable. Ibid. "The relevant question ... is the objective (albeit fact-specific) question whether a reasonable officer could have believed [the defendant's] warrantless search to be lawful, in light of clearly established law and the information the searching officers possessed. [A defendant's] subjective beliefs about the search are irrelevant." Id. at 641, 107 S.Ct. at 3040, 97 L.Ed.2d at 532.
Adopting the standard set forth in Anderson v. Creighton, our Supreme Court, as noted, has held that "a law enforcement official can defend a section 1983 claim by establishing either that he or she acted with probable cause, or, even if probable cause did not exist, that a reasonable police officer could have believed in its existence." Kirk v. City of Newark, supra, 109 N.J. at 184, 536 A.2d 229 (emphasis added). Thus, the term "reasonable" as used in the context of Fourth Amendment violations is not necessarily the equivalent of the "reasonable" standard applied to qualified immunity analysis. Plaintiff's assertion that Judge Kreizman was, for purposes of civil liability, controlled by Judge Kennedy's finding at the suppression hearing is incorrect in light of unambiguous caselaw. Simply put, just because Trooper Coyle violated plaintiff's Fourth Amendment right to be free from an unreasonable *658 seizure when he seized the prescription bottle does not necessarily mean that he acted in an objectively unreasonable manner, sufficient to destroy his qualified immunity. The municipal judge believed the search was reasonable.
The United States Supreme Court has emphasized the importance of granting summary judgment on the basis of qualified immunity in suits against government officials as a means of screening out insubstantial claims and shielding government officials from the costs and burdens of trial and discovery. Anderson v. Creighton, supra, 483 U.S. at 646 n. 6, 107 S.Ct. at 3042 n. 6, 97 L.Ed.2d at 535 n. 6. Qualified immunity is a question of law that "ordinarily should be decided by the court long before trial." Hunter v. Bryant, ___ U.S. ___, ___, 112 S.Ct. 534, 537, 116 L.Ed.2d 589, 596 (1991). Our own Supreme Court has interpreted the United States Supreme Court's opinions in Anderson v. Creighton and Malley v. Briggs as emphasizing and encouraging the "disposition of [section 1983] actions as a matter of law, at least when these actions arise out of an alleged unlawful arrest, search, or seizure by a law enforcement officer." Kirk v. City of Newark, supra, 109 N.J. at 179, 536 A.2d 229; see Gurski v. State Police Department, 242 N.J. Super. 148, 159, 576 A.2d 292 (App. Div. 1990).
Extant caselaw establishes that qualified immunity should shield Trooper Coyle from suit for damages if "a reasonable officer could have believed [Trooper Coyle's] warrantless search to be lawful, in light of clearly established law and the information [he] possessed." Anderson v. Creighton, supra, 483 U.S. at 641, 107 S.Ct. at 3040, 97 L.Ed.2d at 532. As noted, with respect to qualified immunity, a plaintiff must show that the defendant violated some clearly established right. Harlow v. Fitzgerald, 457 U.S. at 818, 102 S.Ct. at 2738, 73 L.Ed.2d at 410. In Anderson v. Creighton, the Court further refined Harlow's "clearly established right" standard:
our cases establish that the right the official is alleged to have violated must have been "clearly established" in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would *659 understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action has been held unlawful, ... but is to say that in light of pre-existing law the unlawfulness must be apparent. [483 U.S. at 640, 107 S.Ct. at 30-39, 97 L.Ed.2d at 531.]
However, there does not have to be "precise factual correspondence" between the case at issue and a previous case in order for a right to be "clearly established." DiLoreto v. Borough of Oaklyn, 744 F. Supp. 610, 619-20 (D.N.J. 1990), citing People of Three Mile Island v. Nuclear Regulatory Comm'rs, 747 F.2d 139, 144-45 (3rd Cir.1984). If the right allegedly violated was not "clearly established" at the time of the defendant's action, then the action against the official must be dismissed, regardless of any factual dispute. See Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411, 425 (1985).
At the time of this seizure in June 1989, the "plain view" exception to the Warrant Clause was clearly established. See Arizona v. Hicks, 480 U.S. 321, 327, 107 S.Ct. 1149, 1154, 94 L.Ed.2d 347, 355 (1987); Coolidge v. New Hampshire, 403 U.S. 443, 465, 91 S.Ct. 2022, 2037, 29 L.Ed.2d 564, 582 (1971). The boundaries of the doctrine can fairly be said to have been open to question in this State, at least as to potential containers of illegal narcotics, until June 19, 1991 when State v. Demeter, 124 N.J. 374, 590 A.2d 1179 (1991), was decided. Following a split Appellate Division opinion, the Supreme Court held that a police officer did not have probable cause to believe that there was contraband in an ordinary film canister which he viewed in the front console of a stopped van. The trial judge had upheld this search. A panel of our court reversed the trial judge, with a dissent, 231 N.J. Super. 114, 121, 555 A.2d 30 (App.Div. 1989), in March 1989, three months before Trooper Coyle had to make his curbstone constitutional judgment in the case before us. In similar cases, federal circuit courts have said that "where impartial judges have disagreed, the contours of [plaintiff's] right can hardly be said to be clear." Bigford v. Taylor, 896 F.2d 972, 975 (5th Cir.1990), and "we cannot realistically expect that reasonable police officers know more than reasonable judges about the law." Barts v. Joyner, 865 F.2d 1187, *660 1193 (11th Cir.), cert. denied, 493 U.S. 831, 110 S.Ct. 101, 107 L.Ed.2d 65 (1989). "To say the least, when a state court judge upholds the constitutionality of police action, that alerts us to be particularly careful in concluding that the law was truly clearly established before we permit the officers to be held civilly liable." Id. at 1194. As we have noted, the municipal court judge upheld the search in the case before us.
Trooper Coyle made a mistake when he picked up the bottle and then looked at the label. He had satisfied two basic requirements of the "plain view" doctrine, but not the third. The three requirements are: (1) the officers must lawfully be at the place from which they observe the evidence; (2) the discovery of the evidence must be inadvertent; and (3) the incriminating character of the evidence must be immediately apparent. Coolidge v. New Hampshire, supra, 403 U.S. at 465-70, 91 S.Ct. at 2037-40, 29 L.Ed.2d at 582-85. Since the incriminating character of the bottle was not immediately evident to him before he picked it up, the Trooper violated the "new" 1987 doctrine or rule first revealed in Arizona v. Hicks, supra, 480 U.S. 321, 327, 107 S.Ct. 1149, 1154, 94 L.Ed.2d 347, 355 ("No reason is apparent why an object should routinely be seizable on lesser grounds ... than would have been needed to obtain a warrant for that same object if it had been known to be on the premises"). Arizona v. Hicks was a controversial 6-3 decision, with strong dissents by Justices Powell and O'Connor, decided in the core privacy context of a home, not an automobile. In Arizona v. Hicks, police officers searched defendant's apartment pursuant to the "exigent circumstances" exception to the warrant requirement. While in the apartment, one officer noticed stereo equipment in plain view which he suspected had been stolen. The officer then turned the components around or over in order to read the serial numbers so he could run a trace. The Court held that although the stereo components were in plain view moving them produced a new invasion of defendant's rights unjustified by the initial exigent circumstances. Id. at 326-27, 107 S.Ct. at 1152, 94 L.Ed.2d at 354-55. This search required probable cause, not mere suspicion. Ibid.
*661 All of this suggests to us that the minimal intrusion of picking up an intrinsically innocent or at least a likely neutral object like this pill bottle, voluntarily exposed to the trooper's view, for a cursory look was not sufficiently and objectively a clear constitutional violation in June of 1989 when Trooper Coyle picked up, looked at and then seized the bottle. We will not strip him of his qualified immunity in such a close matter. "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, supra, 483 U.S. at 640, 107 S.Ct. at 3038-39, 97 L.Ed.2d at 531.
The federal Supreme Court, in recognizing the danger of subjecting an officer to potential liability every time his on-the-scene assessment of probable cause later is found erroneous in the deliberative calm of a pretrial suppression hearing, has interpreted the qualified immunity defense to "provide[] ample protection to all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, supra, 475 U.S. at 341, 106 S.Ct. at 1096, 89 L.Ed.2d at 278. Likewise, our own Supreme Court has noted, "[w]e know how hard it is for an officer on patrol to make split-second decisions that have to be analyzed months, if not years, later on a constitutional dimension." State v. Lund, 119 N.J. 35, 49, 573 A.2d 1376 (1990). See also Anderson v. Creighton, supra, 483 U.S. at 644, 107 S.Ct. at 3041, 97, L.Ed.2d at 533 ("We have frequently observed, and our many cases on point amply demonstrate, the difficulty in determining whether particular searches and seizures comport with the Fourth Amendment.")
Affirmed.