

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CR–15–733

| | |
|---|---|
| MARCUS O. MILLSAP<br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br>APPELLEE | **Opinion Delivered** April 6, 2016<br><br>APPEAL FROM THE POPE COUNTY<br>CIRCUIT COURT<br>[NO. CR-2014-207]<br><br>HONORABLE WILLIAM M.<br>PEARSON, JUDGE<br><br>AFFIRMED |

## BRANDON J. HARRISON, Judge

Marcus Millsap entered a conditional plea of no contest to delivery of a controlled substance and possession with the purpose to deliver, and he now appeals, arguing that the circuit court erred in denying his motion to suppress. We affirm.

### I. *Facts*

On 1 May 2014, agents working with the Fifth Judicial Drug Task Force (DTF) met with a confidential informant to set up a controlled purchase of methamphetamine from Millsap. In the early morning hours of May 2, after the purchase had been completed, officers initiated a traffic stop of Millsap and arrested him. In June 2014, Millsap was charged with delivery of methamphetamine, possession with the purpose to deliver, and possession of a controlled substance.

On 8 April 2015, Millsap filed a motion to suppress any and all evidence seized after the warrantless traffic stop and his arrest, asserting that there was no probable cause to

stop his vehicle. On 23 April 2015, Millsap amended his motion to suppress to include his custodial statement made after his arrest. He argued that he had asked that the recording of his interview be stopped and had asserted his *Miranda* rights, but the State violated Ark. R. Crim. P. 4.7 (2014) when it failed to preserve, on audio/visual equipment, the part of the interview when he verbally invoked his *Miranda* rights during the interview. Rule 4.7 governs the recording of custodial interrogations.

The circuit court held a suppression hearing on 4 May 2015. Tony Haley, a narcotics investigator with the Arkansas State Police, testified that on 1 May 2014, he used confidential informant Bruce Hurley to make a controlled buy of methamphetamine. He explained that he had known Hurley for approximately ten years, that Hurley had an extensive criminal history, and that in exchange for assisting the police, Hurley would not be charged with two counts of delivery of methamphetamine. Haley testified that he had been familiar with Millsap for five or six years and that Hurley was supposed to purchase four ounces of methamphetamine from Millsap for $3600. Haley explained that the transaction was scheduled to occur at Hurley's residence on 1 May 2014 and that on the afternoon of May 1, he met with Hurley at his residence, searched Hurley's person and residence for controlled substances and found none, and then listened to Hurley make telephone contact with Millsap. Once Millsap was on his way to the residence, Haley equipped Hurley with an electronic-monitoring device, set up a video recorder inside Hurley's residence, and gave Hurley $3600 in buy money. Haley then hid in an abandoned car in the front yard and observed the residence.

2

Haley watched Millsap and a female, identified as Christy Hamilton, arrive at Hurley's residence. Haley stated that Millsap and Hamilton were in the residence less than thirty minutes, and then they, along with Hurley, left in Millsap's vehicle. Hurley texted Haley and told him that the deal had not yet taken place and that they were going down the road to look at a trailer house that Millsap was interested in buying. After approximately one hour, the three of them returned and went back into Hurley's residence. After another hour, Millsap and Hamilton left the residence. Haley then entered the residence, confirmed with Hurley that the purchase had taken place, and retrieved approximately two ounces of methamphetamine from Hurley. Haley then gave the order to nearby officers to stop Millsap's vehicle and arrest him. Other officers picked up Haley, and they proceeded to the Russellville DTF office. Haley testified that he arrived at the office at approximately 1:15 a.m. on May 2; Deputy Noyes with the Pope County Sheriff's Office brought Millsap in and escorted him to an interview room soon after.

Haley stated that Millsap was in the interview room approximately five minutes before he and Agent Chad Stephenson went into the room. Haley said that he told Millsap what he was charged with and that the officers wanted to speak to him, and that he advised Millsap of his *Miranda* rights. Haley explained that he read the *Miranda*-rights form to Millsap and that Millsap acknowledged and understood his rights. Millsap initialed the *Miranda*-rights form and signed a waiver of rights, which was introduced as State's Exhibit 1. Haley stated that the interview room was set up so that interviews are recorded and that the recorder was on that night. The recording system had only been

operational for a couple of months, and only a few interviews had been conducted since the recording system's installation. Haley explained that after Millsap had signed the *Miranda* waiver of rights, he asked if the interview was being recorded, and Haley confirmed that it was. According to Haley, Millsap then stated, "If you will turn it off, I will talk to you." Haley asked Agent Stephenson to turn off the recorder, which he did, and Haley then proceeded to question Millsap about the drugs that had been found in his vehicle. Haley said that Millsap took ownership of the drugs and said that he was selling drugs "to support [his] habit." Millsap then told Haley about other individuals from whom Millsap could purchase a large amount of methamphetamine.

Haley stated that Millsap was forty-eight years old, very intelligent, and familiar with the legal system. He explained that Millsap had previous convictions for possession of a controlled substance, delivery of a controlled substance, drug paraphernalia, and retaliation against a witness. Haley denied making any threats or promises to Millsap.

Haley also explained that in preparing this case for prosecution, he attempted to recover the recording of Millsap's interview, up to the point where he asked that the recorder be turned off, but the recording was not there. On cross-examination, he confirmed that all verbal communications between himself and Millsap, including his explanation of Millsap's *Miranda* rights and Millsap's request to turn off the recorder, had been erased. He also testified that he was aware that Hamilton was Hurley's ex-wife. Haley explained that Hurley was not a "good citizen" but that was why he took steps to eliminate the opportunity for Hurley to lie to him. In response to the question of whether Hurley might have motive to set up Millsap, Haley stated, "Anything is

possible." He also explained that the video recorder inside Hurley's residence did not function properly and acknowledged that he could not see what had occurred inside the residence. He also acknowledged that in the audio recording of the controlled buy, the words "drugs" or "controlled substances" are not used and that when Millsap says he will have to meet Hurley in Little Rock later "to get the other two," he does not identify what he is talking about. Haley agreed that he relied on Hurley.

Jeffrey Noyes, a patrol division supervisor for the Pope County Sheriff's Office, testified that on May 1, 2014, he assisted the DTF by stopping a vehicle for them. He explained that shortly before 1:00 a.m. on May 2, DTF officers called him and gave him a description of Millsap's car. Noyes located the vehicle a short time later and arrested Millsap, who was driving the car. Noyes searched Millsap and found a large amount of currency, roughly $3700, and a small plastic bag containing what Noyes believed to be methamphetamine. Noyes transported Millsap to the DTF office and placed him in an interview room.

David Davis, a coordinator for the DTF, testified that he participated in the search of Millsap's car after his arrest. He testified that between the passenger seat and the console, he found a black bag containing two ziploc baggies of what he believed to be methamphetamine and a large amount of cash. He stated that the money found in the black bag matched the money that was given to the informant for the controlled buy, and the bag contained about three ounces of methamphetamine. Davis explained that as the DTF coordinator, he was responsible for the recording equipment in the interview room. Davis said that he thought the recordings would be kept until the hard drive was full,

which would take months, but after the recording in this case could not be retrieved, he learned that recordings were only kept for a thirty-day period and then deleted. He said that he had since taken steps to rectify the situation.

Chad Stephenson, an officer with the Pope County Sheriff's Office who is assigned to the DTF, testified that he participated in the interview with Millsap on May 2, that Haley advised Millsap of his *Miranda* rights, and that Millsap asked them to shut off the recording device. Stephenson explained that he left the room to shut off the recorder and then returned to the interview room, where Millsap said that the drugs in the car belonged to him and told officers of other people from whom he could buy methamphetamine.

Millsap testified too. He said that when he was stopped, he did not understand that he was arrested, only that he was wanted for questioning. He testified that Deputy Noyes took him to the DTF office, and he agreed that he asked the officers to turn off the recording of the interview. Millsap agreed that it was his understanding that whatever he said would not be used against him, and he also agreed that he invoked his right to counsel. The officers, according to Millsap, continued to talk to him, just "casual conversation," after he asked for an attorney. On cross-examination, he agreed that no threats had been made against him, that he was familiar with the *Miranda* rights, and that those rights had been given to him in this case. He also stated that he invoked his right to an attorney after he had asked the officers to turn off the recording. When asked why he did not invoke his right to an attorney while the recording was still on, Millsap said that he "was in a very nervous situation." And he repeated that any questions the police asked

after he had requested an attorney were "just conversation" and that he "didn't consider it questioning." On redirect, Millsap reiterated that he did not believe that what he said to the police would be used against him because it was "off the record."

Tony Haley was recalled and testified that Millsap did not request an attorney at any time during the interview.

In closing arguments, the defense argued that there was no showing of reliability of the informant and that the stop was not based on probable cause. The defense also argued that the State had a duty to preserve any recording under Ark. R. Crim. P. 4.7.

From the bench, the court made the following findings. First, it found that "there was reasonable suspicion to believe that a felony had taken place. Thus there was authority to arrest without a warrant based on the facts of the controlled buy." Second, the court declined to read Rule 4.7 as a rule requiring automatic exclusion if there is a failure to preserve a recording. The court found that Davis gave a "satisfactory explanation" of why the recording was deleted and that there was no bad faith on the part of the police. And finally, the court found that whether Millsap invoked his right to counsel was "purely a credibility issue," which the court resolved in favor of the State. It stated,

> I'm going to find that he did not, and I credit the testimony of Officer
> Stephenson and Officer Haley the best evidence of that. While you don't
> have a recording, which you didn't need one because Mr. Millsap testified
> all that occurred—supposedly occurred after the recording was turned off.
> The *Miranda* rights form is the best evidence, along—coupled with Mr.
> Millsap's familiarity with the *Miranda* warnings through his previous criminal
> history and the fact that he would be advised of his *Miranda* rights and
> understand his *Miranda* rights and then get the recorder turned off, which
> they complied with his request, and then he invoked counsel just doesn't

make sense. It seems to me a person would invoke counsel while the recorder was on to preserve that important right.

The motion to suppress was therefore denied.

Following this ruling, Millsap entered a conditonal plea of no contest to delivery of a controlled substance and possession with purpose to deliver and was sentenced to ten years' imprisonment on each count, to run consecutively. (The possession charge was nolle prossed.) Millsap has now appealed, arguing that the circuit court erred in denying his motion to suppress.

## II. *Standard of Review*

When reviewing a circuit court's denial of a motion to suppress evidence, the appellate court conducts a de novo review based on the totality of the circumstances, reviewing findings of historical facts for clear error and determining whether those facts give rise to reasonable suspicion or probable cause, giving due weight to the inferences drawn by the circuit court. *Pickering v. State*, 2012 Ark. 280, 412 S.W.3d 143. A finding is clearly erroneous, even if there is evidence to support it, when the appellate court, after reviewing the entire evidence, is left with the definite and firm conviction that a mistake has been made. *Id.* We defer to the circuit court's superior position in determining the credibility of the witnesses and resolving any conflicts in the testimony. *Id.*

## III. *Suppression of Evidence From the Traffic Stop*

An officer may stop a vehicle and make a warrantless search if it is on a public highway, and he or she has reasonable cause to believe the vehicle contains evidence subject to seizure, and the circumstances require immediate action to prevent destruction or removal of the evidence. *Willett v. State*, 298 Ark. 588, 769 S.W.2d 744 (1989).

Reasonable cause as required by Ark. R. Crim. P. 14.1 exists when the officers have reasonably trustworthy information, which must be more than mere suspicion, that the stopped vehicle contains evidence subject to seizure and a person of reasonable caution would be justified in believing an offense has been committed or is being committed. *Id.* The test for reasonable cause for stopping and searching a vehicle depends on the collective information of the police officers and not solely on the knowledge of the officer stopping the vehicle. *Id.*

Millsap argues here, as he did below, that the warrantless traffic stop lacked probable cause. He asserts that the State failed to establish the reliability of the informant, citing Hurley's criminal history and the circumstances of the controlled buy as described by Haley. Millsap specifically contends that Haley "admitted that he had to rely upon hearsay of the unreliable informant to know whether a controlled buy had occurred and to order the stop of the vehicle."

Millsap compares this case to *Jones v. State*, 2011 Ark. App. 683, in which this court affirmed the denial of a motion to suppress under similar facts. In *Jones*, police officers set up a controlled buy between the informant and a person named Latisha Longnecker. Officers watched the informant enter an apartment; Longnecker enter the apartment; Longnecker exit the apartment and get into the passenger seat of a white Mitsubishi driven by Jones (who was previously identified by the informant as "the dope guy"); Longnecker reenter the apartment; and the informant exit the apartment and present a small bag of an off-white, rock-like substance, later identified as cocaine, to the officers. Jones argued that because the police did not testify that the informant was reliable, they were "relying on

the hearsay of an unproven person to use as a basis for the stop." *Id*. at 3. In affirming, this court explained,

> Here, the officers observed the controlled buy visually to the extent possible and also listened to the conversation between the informant and Longnecker. Based on their observations, they knew that Longnecker did not have the drugs when the informant first arrived. After going out to the white Mitsubishi, however, she returned with what she represented to be drugs. Based on the officers' own observations, it was reasonable to conclude that the Mitsubishi driver was involved in the drug transaction. Therefore, probable cause existed regardless of the informant's reliability.

*Id*. at 4–5. Millsap argues that *Jones* is distinguishable from the present case because "Haley admits that he could not observe the transaction" and "the informant had plenty of opportunity to retrieve [the] controlled substance, and put money in the Appellant's vehicle other than from the Appellant."

We are not persuaded that *Jones* is distinguishable in a meaningful way. In *Jones*, the officers could not see an exchange of contraband between Jones and Longnecker or Longnecker and the informant, but we concluded that from the totality of the circumstances, including the officers' observation, the audio of the conversation between the informant and Longnecker, and the informant's possession of drugs immediately after the transaction, that the stop of Jones's car was supported by probable cause. The same analysis applies here: Haley did not actually see the purchase of methamphetamine that took place inside Hurley's residence; but based on the totality of the circumstances, including Haley's observation of Millsap's arrival and departure, the audio of the conversation between Hurley and Millsap, and Hurley's possession of methamphetamine immediately after his interaction with Millsap, we hold that probable cause existed to justify the warrantless stop and arrest of Millsap, regardless of the informant's reliability.



IV. *Suppression of the Custodial Statement*

A statement made while in custody is presumptively involuntary, and the burden is on the State to prove by a preponderance of the evidence that a custodial statement was given voluntarily and was knowingly and intelligently made. *See Grillot v. State*, 353 Ark. 294, 107 S.W.3d 136 (2003). To determine whether a waiver of *Miranda* rights is voluntary, this court looks to see if the confession was the product of free and deliberate choice rather than intimidation, coercion, or deception. *See id.*

For his first argument under this point, Millsap appears to argue that the officers employed some type of deception in obtaining his statement. He states that he knew Haley "from [a] previous relationship" and that "he trusted Haley when Haley promised him that he could talk off the record and that his statement would not be used against him." But Millsap never made this argument to the circuit court. Arguments not raised below are waived, and parties cannot change the grounds for an objection on appeal but are bound by the scope and nature of the objections and arguments made at trial. *See Abshure v. State*, 79 Ark. App. 317, 87 S.W.3d 822 (2002).[1]

Millsap also argues that the circuit court should have suppressed the use of his custodial statement due to the State's failure to comply with Rule 4.7 of the Arkansas Rules of Criminal Procedure. Rule 4.7 provides that, whenever practical, a custodial interrogation should be electronically recorded. Ark. R. Crim. P. 4.7(a). The rule also

---

[1] The record reveals that Millsap never testified that Haley made any promises to him and specifically never testified that Haley promised his statement would be "off the record" and not used against him. Millsap only agreed during direct examination that it was his "understanding" that whatever he said would not be used against him.

provides that in determining the admissibility of any custodial statement, the court may consider, together with all other relevant evidence and consistent with existing law, whether an electronic recording was made, or if not, why an electronic recording was not made. Ark. R. Crim. P. 4.7(b)(1). However,

> (2) The lack of a recording shall not be considered in determining the admissibility of a custodial statement in the following circumstances:
> . . . .
>
> (F) a statement made during a custodial interrogation by a suspect who requests, prior to making the statement, to respond to the interrogator's questions only if an electronic recording is not made of the statement, provided that an electronic recording is made of the statement of agreeing to respond to the interrogator's question, only if a recording is not made of the statement[.]

Ark. R. Crim. P. 4.7(b). Finally, the rule dictates that an electronic recording must be preserved until the later of (1) the date on which the defendant's conviction for any offense relating to the statement is final and all direct and postconviction proceedings are exhausted, or (2) the date on which the prosecution for all offenses relating to the statement is barred by law. Ark. R. Crim. P. 4.7(c).

Millsap agrees that there is no dispute that he asked for the recording to be turned off. He does argue, however, that under Rule 4.7(c), the State had a duty to preserve the recording that was made until the time he asked for it to be stopped, and because that was not done, his custodial statement (made after the recording had been stopped) should have been suppressed.

We disagree. Rule 4.7 does not require automatic exclusion, and subsection (b)(2)(F) clearly states that the lack of a recording is not considered in determining the admissibility of a custodial statement if the person interviewed asked for the recording to

 

be stopped, which is what happened here.  We affirm the circuit court's denial of the motion to suppress.

Affirmed.

GLADWIN, C.J., and WHITEAKER, J., agree.

*Laws Law Firm, P.A.*, by: *Hugh R. Laws*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Rachel Kemp*, Ass't Att'y Gen., for appellee.